**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**CHICAGO MARINE CONTAINERS, INC., Respondent.**

No. 83–1909.

United States Court of Appeals, Seventh Circuit.

Argued May 8, 1984.

Decided Oct. 4, 1984.

L. Pat Wynns, N.L.R.B., Elliott Moore, N.L.R.B., Washington, D.C., for petitioner.

Dana S. Connell, Matkov, Griffin, Parsons, Salzman & Madoff, Chicago, Ill., for respondent.

Before WOOD and ESCHBACH, Circuit Judges, and KELLAM, Senior District Judge.*

HARLINGTON WOOD, Jr., Circuit Judge.

The National Labor Relations Board (the "Board") seeks enforcement of its order finding Chicago Marine Containers, Inc. ("the company") in violation of subsections (a)(1) and (a)(5) of section 8 of the Labor Management Relations Act, 29 U.S.C. § 158(a)(1), (5) (1982), because of the company's refusal to bargain with the United Electrical, Radio and Machine Workers of America ("the union"), the union certified as the exclusive bargaining representative of the company's employees. The company admittedly has refused to bargain with the union, which won election with over ninety

percent of the votes, to test the propriety of the Board's certification of the union. We conclude that the company's challenges to the representation election are wholly without merit. The Board's order will be enforced.

## I.

. On July 1, 1981, a majority of the company's employees voted to be represented by the Electrical Workers in place of the Sheet Metal Workers, their former representative.[1] Five days later, the company filed timely objections to the election, seeking to set aside the result because the union allegedly had (1) engaged in pre-election "misrepresentations of fact and other false and misleading statements concerning crucial issues"; (2) threatened and coerced employees into supporting the union; (3) engaged in conduct that "impugned the integrity" of the Board's processes; all of which (4) interfered with the holding of a free and fair election.

These objections were investigated by the Board's regional director without a hearing. On August 19, 1981, the regional director issued a Supplemental Decision on Objections that overruled the company's objections and certified the union as the employees' bargaining representative. The company sought review of the regional director's decision with the Board, contending that the regional director erred in overruling the company's objections, in failing to assess the union's cumulative conduct, and in denying the company a hearing on the objections. On September 24, 1981, the Board summarily denied the company's request for review and a hearing on the ground that no substantial issues were raised warranting further proceedings.

---

* The Honorable Richard B. Kellam, Senior District Judge of the Eastern District of Virginia, is sitting by designation.

**1.** The election results were as follows:

Approximate number of eligible voters ... 196
Void ballots ............................ 1
Votes cast for the union ................ 137
Votes cast for the Sheet Metal Workers .. 12
Votes cast against participating in labor organizations ........................ 4
Challenged ballots ...................... 2
Valid votes counted plus challenged ballots 155

The company thereafter refused to bargain with the union. The union filed unfair labor practices charges, and a complaint issued. In its answer, the company defended itself by claiming that the union was not validly certified as the bargaining representative because of improprieties in the election. The Board entered summary judgment against the company. The Board disposed of the issues raised by the company in the unfair labor practices proceeding by holding that the issues had been or could have been litigated in the representation proceeding, that the company had failed to offer at a hearing any newly discovered or previously unavailable evidence, and had not alleged the existence of any special circumstances requiring the Board to reexamine its decision in the representation proceeding. Accordingly, the Board concluded that the company's refusal to bargain violated subsections (a)(1) and (a)(5) of section 8 of the Labor Management Relations Act and directed the company to cease and desist from refusing to bargain with the union. This appeal followed.

## II.

On appeal, the company challenges the Board's refusal to grant it an evidentiary hearing and renews its four objections to the validity of the representation election because of alleged unlawful pre-election conduct by the union.

## A.

■ A party challenging a representation election is entitled to an evidentiary hearing only when it raises substantial and material factual issues and proffers evidence that establishes a prima facie case for setting aside the election. *NLRB v. Howard Johnson Motor Lodge*, 705 F.2d 932, 934 (7th Cir.1983); *Advertisers Manufacturing Co. v. NLRB*, 677 F.2d 544, 546

(7th Cir.1982); *cf.* Board Rules and Regulations, 29 C.F.R. § 102.69(d) (1984).

The Board is entitled to rely on the Regional Director's report in the absence of specific exceptions supported by offers of proof of facts contrary to the Regional Director's findings. *NLRB v. Belcor, Inc.*, 652 F.2d 856, 859 (9th Cir. 1981). If, however, there are substantial and material factual disputes between the election report and the exceptions, a hearing is required. *Id.*

*NLRB v. Advanced Systems, Inc.*, 681 F.2d 570, 572 (9th Cir.1982).

■ We believe, as we make clear in our discussion of the company's specific objections, that the company has failed to provide evidence establishing a prima facie case of election impropriety. In addition, the company, through all of its challenges, has not taken issue with any factual findings by the regional director; it has merely disagreed with the regional director's conclusions. *See Magic Pan, Inc. v. NLRB*, 627 F.2d 105, 109 (7th Cir.1980); *Louis-Allis Co. v. NLRB*, 463 F.2d 512, 520 (7th Cir.1972). As we find below, the facts as alleged do not warrant setting aside the election, and therefore the Board's refusal to grant an evidentiary hearing is supported by substantial evidence.[2]

## B.

The company renews its first and third objections regarding alleged misrepresentations made by the union in its pre-election campaign literature. The company's first objection is that the union made material misrepresentations about the Sheet Metal Workers, the company, and their relationship. The company points to language in the union literature stating that the company was "pushing [the employees] around," that the Sheet Metal Workers "did nothing to help," and that the existing bargaining agreement was "a cozy little marriage li-

---

**2.** We held in *Mosey Manufacturing Co. v. NLRB*, 701 F.2d 610 (7th Cir.1983) (en banc), that our review of the Board's application of a rule to the facts of a particular case is governed by the "substantial evidence" test. *Id.* at 615. Because the assessment of whether a prima facie case

exists so as to warrant an evidentiary hearing involves the application of the Board's substantive rules to facts, *see NLRB v. Howard Johnson Motor Lodge*, 705 F.2d 932, 934 (7th Cir.1983), any decision based on such an assessment must be supported by substantial evidence.

cense." The company's third objection is that the union impugned the integrity of Board proceedings by misrepresenting their purpose and effect through statements in the campaign literature characterizing the Sheet Metal Worker's pre-election unfair labor practices charges against the company, which had the effect of temporarily "blocking" the election, as "phony" and motivated by a desire to "stall the election."

The parties disagree as to what standard we should apply in determining whether the union's pre-election statements justify setting aside the election. The Board has vacillated between two standards. The first of these standards, enunciated originally in *Hollywood Ceramics Co., Inc.*, 140 N.L.R.B. 221 (1962), requires that a representation election be set aside if there is

(1) a misrepresentation of a material fact involving a substantial departure from the truth, (2) made by a party with special knowledge of the truth, (3) communicated so shortly before the election that the other party has insufficient time to correct it, and (4) involving facts about which the employees are not in a position to know the truth. The misrepresentation need not be deliberate so long as it may reasonably be expected to have significant impact on the election.

*Peerless of America, Inc. v. NLRB*, 576 F.2d 119, 123 (7th Cir.1978); *see Hollywood Ceramics*, 140 N.L.R.B. at 224. The second standard, most recently described in *Midland National Life Insurance Co.*, 263 N.L.R.B. 127 (1982), rejects the position of setting aside an election based on the *substance* of the misrepresentation. Instead, under *Midland*, the Board will intervene only when the misrepresentation involves the use of "an official Board document [which] has been altered in such a way as to indicate an endorsement by the Board of a party to the election," or "forged documents which render voters unable to recognize propaganda for what it is." *Midland*, 263 N.L.R.B. at 133 & n. 25. *See also St. Elizabeth Hospital v. N.L.R.B.*, 715 F.2d 1193, 1198 (7th Cir.1983).

At the time the regional director made his recommendations and at the time they were affirmed by the Board, the *Hollywood Ceramics* standard was in effect.[3] Applying that standard, the regional director found no material misrepresentations. On appeal, counsel for the Board urges us to apply the *Midland* standard. The company does not dispute that the Board's new policy is a permissible exercise of the Board's discretion, but contends that the new policy should not be applied retroactively to this case.

We note initially that, even applying pre-*Midland* policies, the Board's decision is supported by substantial evidence. The company's objections, based as they are on certain statements appearing in the union's campaign literature that are obvious expressions of opinion, are entirely without merit. The statements that the company was pushing the employees around, that the incumbent Sheet Metal Workers union had done nothing, and that the Sheet Metal Workers union's relationship with the company was a "cozy little marriage license" are, as found by the regional director, "legitimate campaign propaganda" and not misrepresentations at all. They are precisely the kind of insubstantial "derogatory

**3.** *Hollywood Ceramics* was overruled in *Shopping Kart Food Market, Inc.*, 228 N.L.R.B. 1311 (1977), in which the Board stated that it would "no longer probe into the truth or falsity of the parties' campaign statements" but would intervene "in instances where a party has engaged in such deceptive campaign practices as improperly involving the Board and its processes, or the use of forged documents which render the voters unable to recognize the propaganda for what it is." *Id.* at 1311, 1313. The Board overturned *Shopping Kart* and reinstated the *Hollywood Ceramics* standard, however, less than two years later in *General Knit of California, Inc.*, 239 N.L.R.B. 619 (1978), and then reversed itself again in *Midland*. The entire chronology is as follows:

| | |
|---|---|
| December 20, 1962: | *Hollywood Ceramics* |
| April 8, 1977: | *Shopping Kart* (overruling *Hollywood Ceramics*) |
| December 6, 1978: | *General Knit* (overruling *Shopping Kart* and readopting *Hollywood Ceramics*) |
| August 4, 1982: | *Midland* (overruling *Hollywood Ceramics/General Knit* and readopting *Shopping Kart*) |

statements about the other party" that the Board in *Hollywood Ceramics* specifically noted could not be expected to have any impact on an election. 140 N.L.R.B. at 224. Such language should be left " 'to the good sense of the voters ....' " *Baker Canning Co. v. NLRB*, 505 F.2d 574, 576 (7th Cir.1974) (citation omitted).

In addition, as noted by the regional director, although the union's campaign literature appeared at least two weeks prior to the election, the company made no effort in its ensuing campaign literature to respond to the statements. Finally, the statements involve matters within the knowledge of the employees; the employees were intimately familiar with the bargaining relationship between the Sheet Metal Workers and the company and were entirely capable of evaluating the statements for what they were—mere opinions. *See Melrose-Wakefield Hospital Association v. NLRB*, 615 F.2d 563, 568 (1st Cir.1980).

Similarly, the union's statements that the Sheet Metal Workers' pre-election unfair labor practices charges were "phony" and designed to "stall" the election were obviously only the opinion of the leaflet writers. As noted by the regional director, these statements "did not suggest either directly or indirectly that the Board endorsed a particular choice in the election [or] otherwise impugn the Board's processes." Furthermore, the regional director observed that the only statement relating directly to the Board's procedures—the statement that advised employees that an election could not be held during the pendency of the Sheet Metal Workers' unfair labor practices charges—was

factually accurate and "correctly stated the general rule with respect to blocking charges." *See* NLRB Casehandling Manual Part II, § 11730. Finally, even if the statements in the company's view mischaracterized the company's motives, the company and the Sheet Metal Workers had a week in which to respond to them.

■■ Although the company's first and third objections obviously fail under pre-*Midland* rules, we take this opportunity to clarify the circumstances under which *Midland* should be applied retroactively and hold that *Midland* applies here.[4] We note initially that appellate courts ordinarily apply the law in effect at the time the appellate decision is made. *See Bradley v. Richmond School Board*, 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974). In deciding whether to follow an intervening change of policy by an administrative agency, however, it is appropriate to allow the agency to decide in the first instance whether giving the change retroactive effect will best effectuate the policies underlying the agency's governing act. *See NLRB v. Food Store Employees Union, Local 347*, 417 U.S. 1, 10 n. 10, 94 S.Ct. 2074, 2080 n. 10, 40 L.Ed.2d 612 (1974). In *Midland,* the Board specifically stated that its new policy would apply to "all pending cases in *whatever* stage." 263 N.L.R.B. at 133 n. 24 (emphasis added) (quoting *Deluxe Metal Furniture Co.*, 121 N.L.R.B. 995, 1007 (1958)). We think that this broad language reveals an intent to apply *Midland* retroactively to cases, like this one, which were not before us at the time *Midland* was decided.[5]

**4.** Although we apply *Midland* retroactively here, we note that there may be situations in which it might be inappropriate to be strictly bound by the *Midland* standard. *See Van Dorn Plastic Machinery Co. v. NLRB*, 736 F.2d 343, 348 (6th Cir.1984); *NLRB v. New Columbus Nursing Home, Inc.*, 720 F.2d 726, 729 (1st Cir.1983).

**5.** In *Certainteed Corp. v. NLRB*, 714 F.2d 1042 (11th Cir.1983), the Eleventh Circuit undertook an exhaustive analysis of the retroactivity question as it related to cases pending before the courts of appeals at the time *Midland* was decided; unable to determine what the Board's intent

was with respect to those cases, the court remanded for decision of that question. The Board has since indicated that it will not apply *Midland* to cases which the circuit courts decided and remanded to the Board before *Midland.* *See Wells Fargo Guard Services*, 269 N.L.R.B. No. 47 at 3 (1984); *Bauer Welding and Metal Fabricators, Inc.*, 268 N.L.R.B. No. 216 at 3–4 (1984) (Judge Giannali's Supplemental Decision on Remand, adopted by the Board). Because this case was not filed in this court until May 20, 1983, and thus was not pending before us when *Midland* was decided, we think the Board intended *Midland* to apply here.

Although we are not bound by the Board's views on retroactive application, we have previously indicated that we would apply *Midland* retroactively in cases decided by the Board under the *Hollywood Ceramics* rule and appealed to us after *Midland, see NLRB v. Milwaukee Brush Manufacturing Co.*, 705 F.2d 257, 258 (7th Cir. 1983) (per curiam),[6] unless we were unsure whether the Board would have wanted the *Midland* rule to be applied retroactively because of unusual circumstances that cast doubt on whether the election results indicate the free choice of the majority, *see St. Elizabeth Hospital v. NLRB*, 715 F.2d 1193, 1198 (7th Cir.1983); *Mosey Manufacturing Co. v. NLRB*, 701 F.2d 610, 612 (7th Cir.1983) (en banc). In *Mosey*, the election took place five years prior to the court's opinion and was decided by only one vote. During the pendency of that case, the Board had changed the rule on misrepresentations twice and, as a result, protracted and expensive litigation occurred. *Id.* at 612. We observed that these facts made the case "so unusual ... that we cannot be sure it was in the Board's contemplation when the Board announced ... that the new rule would apply to all pending cases." *Id.* We noted that remand to the Board would therefore be appropriate to allow the Board to decide which standard to apply, but declined to do so because the lengthy, Board-caused delay convinced us that its order should not be enforced at all. In *St. Elizabeth*, we remanded to the Board for a determination of which standard to apply because the election was decided by four votes, three of which were challenged, and there were very strong indications that the alleged misrepresentations might have satisfied *Hollywood Ceramics*.

This case does not demonstrate the unusual circumstances present in *Mosey* and *St. Elizabeth*. Here the election was won by a margin of one hundred and sixteen of the one hundred and fifty-three valid votes cast. The Board has changed the rule on misrepresentations only once since the election. While the election was held three years ago, the delay was occasioned only by the ordinary process of administrative and judicial review.[7] In addition, as we noted earlier, the outcome of the case would be the same whichever standard is applied.

■ Finally, this is not a case in which manifest injustice would result to the company from retroactive application of the *Midland* standard. *See Bradley*, 416 U.S. at 711, 94 S.Ct. at 2016. In analyzing whether any manifest injustice would result from retroactive application of a rule, we consider the reliance of the parties on pre-existing law, the effect of retroactivity on accomplishing the purpose of the law, and any injustice arising from retroactive application. *See Chevron Oil Co. v. Huson*, 404 U.S. 97, 107, 92 S.Ct. 349, 355, 30 L.Ed.2d 296 (1971). In this case, there was no clear precedent on which the company could rely. In the four years prior to this election, the misrepresentation rule changed three times amid acrimonious debate. *See, e.g., Shopping Kart Food Market, Inc.*, 228 N.L.R.B. 1311, 1315 (1977) (members Fanning and Jenkins dissenting in part); *General Knit of California, Inc.*, 239 N.L.R.B. 619, 624 (1978) (member Penello dissenting); *Midland*, 263 N.L.R.B. at 133 (members Fanning and Jenkins dissenting). The company makes no argument that retroactive application of *Midland* will in any way retard its operation or purpose.

6. Other courts have approved the retroactive application of the Board's *Midland* rule in cases brought before them under similar circumstances. *See NLRB v. Semco Printing Center, Inc.*, 721 F.2d 886, 892 (2d Cir.1983); *NLRB v. Monark Boat Co.*, 713 F.2d 355, 361 (8th Cir.1983); *NLRB v. Rolligon Corp.*, 702 F.2d 589, 594 (5th Cir.1983).

7. This is not a case in which multiple remands and rebriefing have imposed unreasonable burdens on the employer. If the delay and cost incident to ordinary review of a representation election were enough to trigger the "unusual circumstances" exception of *Mosey*, any employer fortunate enough to have had a representation election at the proper time could compel the use of the *Hollywood Ceramics* standard by objecting to an alleged misrepresentation and going through the review process. *Mosey* clearly was not intended to produce any such result.

Finally, the only hardship or injustice the company can complain of is that during the campaign it was more honest than it was legally required to be. This is not the sort of hardship contemplated in *Chevron* and *Bradley. See NLRB v. Semco Printing Center*, 721 F.2d 886, 892 (2d Cir.1983); *NLRB v. Monark Boat Co.*, 713 F.2d 355, 361 (8th Cir.1983).

■ Because the Board intended *Midland* to govern here, and because there is no reason to apply it prospectively only, this court will consider the company's misrepresentation objections under the *Midland* standard. Applying the *Midland* standard to the present case, it is clear that neither the company's first nor its third objection requires that the July 1, 1981 election be set aside. None of the allegedly objectionable statements involved the use of forged documents or altered Board documents.

### C.

■ In its second objection, the company alleged that the union and its agents coerced employees into supporting or refraining from opposing the union and created an atmosphere of fear among the employees. A party seeking to overturn an election because of coercive conduct carries a heavy burden. The test is "whether the coercive conduct so influenced potential voters that free choice was impossible." *NLRB v. Advanced Systems, Inc.*, 681 F.2d 570, 575 (9th Cir.1982).

■ The only "evidence" the company submitted was the allegation in its supporting position letter that "to the best of the [company's] knowledge, several employees were threatened with the loss of their jobs or benefits if they supported the Sheet Metal Workers." The company never stated the factual basis for this conclusory allegation. Although the regional director provided the company with an opportunity to submit supporting facts, the company failed to do so; the company was unable to provide, for example, the name of anyone who made, witnessed, or was the target of any alleged threat. At oral argument before this court, counsel for the company admitted that the record did not reflect anything about the basis of the company's knowledge of these alleged threats. He went on to argue, however, that "allegations" of coercion were sufficient to entitle the company to an evidentiary hearing.

As we noted earlier, in order to be entitled to an evidentiary hearing, the objecting party must offer *facts* sufficient to sustain a prima facie case. In *Howard Johnson*, we referred to the requirement of a substantial *"factual* allegation," 705 F.2d at 934, and in no way intimated that conclusory allegations unsupported by references to *any* underlying facts would be sufficient to establish a prima facie case. Other courts have emphasized that the objecting party must supply " 'specific evidence from or about specific people' in support of allegations having a basis in law which, if credited, would be sufficient to overturn the election." *NLRB v. Golden Age Beverage Co.*, 415 F.2d 26, 33 (5th Cir.1969) (citing *NLRB v. Douglas County Electric Membership Corp.*, 358 F.2d 125, 130 (5th Cir.1966); *see also NLRB v. Allis-Chalmers*, 680 F.2d 1166, 1170 (7th Cir.1982) (Eschbach, J., concurring).

No evidence establishing a factual basis for the coercion charge was supplied in this case. In our view, to make an objection about coercive conduct without *any* underlying factual support is an abuse of the administrative and judicial processes and evidences a mind bent on achieving protracted delay through litigation mischief. The company has succeeded in avoiding negotiating for over three years with a union overwhelmingly favored by the majority of the company's employees. Conduct of this sort by employers threatens to make a mockery of employees' freedom of choice.

We need not address the company's fourth objection, since that cumulative charge rested on the strength of its other objections, all of which we have found to be without merit. For the reasons stated above, the Board's order is

ENFORCED.