STATE OF ILLINOIS by the ILLINOIS DEPARTMENT OF PUBLIC AID, Plaintiff-Appellant,

v.

Otis R. BOWEN,* Secretary of the United States Department of Health and Human Services, and United States Department of Health and Human Services, Defendants-Appellees.

No. 85–2083.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 6, 1986.

Decided March 11, 1986.

As Amended March 13, 1986.

Karen Konieczny, Sp. Asst. Atty. Gen., Chicago, Ill., for plaintiff-appellant.

Richard A. Urbin, Asst. Reg. Atty. Dept. of H.H.S., Chicago, Ill., for defendants-appellees.

Before CUDAHY, FLAUM and EASTERBROOK, Circuit Judges.

CUDAHY, Circuit Judge.

The State of Illinois sued Margaret Heckler, then Secretary of the United States Department of Health and Human Services ("the Secretary"), claiming that it was owed about $4,000,000 in federal reimbursement for medical services provided by Illinois. An agency determination, which was administratively appealed, had disal-

---

* Pursuant to Fed.R.App. P. 43(c), Otis R. Bowen is substituted as defendant-appellee in this appeal. He succeeded Margaret Heckler, original- ly named as a defendant, as Secretary on December 6, 1985.

lowed the claim. The district court, 609 F.Supp. 1432, granted the Secretary's motion for summary judgment. We affirm.

## I.

Under Title XIX of the Social Security Act ("Medicaid"), 42 U.S.C. § 1396 *et seq.*, federal money is distributed to the states, which in turn provide certain medical services to the poor. In Illinois the Illinois Department of Public Aid (the "IDPA") is the administering state agency. Under Title XIX, the IDPA must create and implement a "plan for medical assistance" that is consistent with Title XIX and with the Secretary's regulations. The plan describes the nature and scope of the state program. 42 U.S.C. § 1396a. After the Secretary approves the plan, the state is entitled each quarter to be reimbursed for a percentage of its expenditures made in providing specific types of "medical assistance" under the plan. 42 U.S.C. § 1396b(a)(1). This reimbursement is called "federal financial participation" ("FFP"). IDPA had an approved plan during the time period covered by this suit.

"Medical assistance," for which Illinois may receive FFP, is defined in 42 U.S.C. § 1396d as follows:

(a) The term "medical assistance" means payment of part or all of the cost of the following care and services ...

(1) inpatient hospital services (other than services in an institution for tuberculosis or mental diseases);

\* \* \* \* \* \*

(4)(A) skilled nursing facility services (other than services in an institution for tuberculosis or mental diseases) ...

\* \* \* \* \* \*

(14) inpatient hospital services, skilled nursing facility services, and intermediate care facility services for individuals 65 years of age or over in an institution for tuberculosis or mental diseases;

(15) intermediate care facility services (other than such services in an institution for tuberculosis or mental diseases) ...

(16) effective January 1, 1973, inpatient psychiatric hospital services for individuals under age 21...

\* \* \* \* \* \*

except as otherwise provided in paragraph (16), such term does not include—

\* \* \* \* \* \*

(B) any such payments with respect to care or services for any individual who has not attained 65 years of age and who is a patient in an institution for tuberculosis or mental diseases.

42 U.S.C. § 1396d(a).[1] Thus the statute seems to exclude services furnished in an institution for mental diseases (an "IMD") for patients between the ages of twenty-one and sixty-five. Illinois argues, however, that the regulations define a narrow exception to the statutory exclusion. The regulations provide:

(a) Except as provided in paragraph (b) of the section, FFP is not available in expenditures for services provided to—

\* \* \* \* \* \*

(2) Individuals under age 65 who are patients in an institution for tuberculosis or mental diseases unless they are under age 22 and are receiving inpatient psychiatric services under § 440.160 of this subchapter.

(b) FFP is available in expenditures for services furnished to eligible individuals during the month in which they become ... patients in an institution for tuberculosis or mental diseases.

42 C.F.R. § 435.1008(a), (b).[2] Illinois argues that this regulation allows FFP for

---

1. The statute was amended in 1984. The only amendments relevant to the parts of the statute quoted above eliminated the references to institutions for tuberculosis.

2. An earlier form of the regulation stated that "Federal financial participation is available in the costs of medical assistance...." 45 C.F.R.

§ 248.60(a)(3)(1) (1976). Because "medical assistance" was defined in the regulations to exclude IMD services for persons between twenty-one and sixty-five, the issue in this case could not arise under the former regulation. When the regulations were reorganized in September 1978, "expenditures for services" replaced "costs

the first month of all IMD services, even services provided to persons between twenty-one and sixty-five. Illinois reconciles this interpretation with the statutory language by asserting that the exception is one merely made in the interests of "administrative convenience." It analogizes to the rule of administrative convenience under which, if an individual is eligible for Medicaid at any time during a month, that individual is eligible for the entire month. 42 C.F.R. § 435.914(b); *see* S.Rep.No. 404, 89th Cong., 1st Sess. 82 (1965), *reprinted in* 1965 U.S. Code Cong. & Ad. News 1943, 2022.

## II.

The material facts here are not in dispute. Prior to 1979, the IDPA never sought or received FFP for IMD services provided to persons between the ages of twenty-one and sixty-five. In February 1979 the IDPA wrote the Regional Commissioner of HHS[3] and inquired whether "individuals age 22–65 who entered an institution are eligible during this first month." This question was referred by HHS to its Office of General Counsel. In

late 1979 or early 1980 HHS's Regional Medicaid Program Representative told the IDPA that such claims seemed to be in accord with the Act and the accompanying regulations. IDPA was told that no state plan amendment was necessary before submitting such "first month" claims for FFP.

Illinois began claiming FFP in January 1980. Its claims extend through the quarter ending June 1982. Several months after Illinois began claiming reimbursement, the HHS Regional Administrator sent a formal response to IDPA's inquiries. He wrote, in relevant part:

> With respect to the second issue raised—that of individuals between the ages of 21 and 64—FFP is available for medical care and services to an otherwise eligible individual during the first month of institutionalization. Coverage extends to all services specified in the approved State plan including per diem rates.

Various HHS internal memoranda that are consistent with the Regional Administrator's answer were circulated within the agency.[4] Other memoranda suggest that

---

of medical assistance," thus creating a potential loophole. Any changes made in the regulations in September 1978 were presumably intended to be editorial, not substantive. 43 Fed.Reg. 45,-176 (1978).

The regulation was amended in May 1985 to eliminate the purported loophole. The regulation now provides:

(a) FFP is not available in expenditures for services provided to—

\* \* \* \* \* \*

(2) Individuals under age 65 who are patients in an institution for tuberculosis or mental diseases unless they are under age 22 and are receiving inpatient psychiatric services under § 440.160 of this subchapter.

(b) The exclusion of FFP described in paragraph (a)(2) of this section does not apply during that part of the month in which the individual is not an inmate of a public institution or a patient in an institution for tuberculosis or mental diseases.

*See* 50 Fed.Reg. 13,196 (1985) (to be codified at 42 C.F.R. §§ 435, 436).

**3.** The Department was then called "The Department of Health, Education and Welfare."

**4.** For example, an August 1980 memorandum to Regional Medicaid Directors from the "Director, Bureau of Program Policy" states:

This responds to various regional inquiries regarding the availability of FFP for services to individuals in institutions for tuberculosis or mental diseases during the month in which an individual enters an institution for tuberculosis or mental diseases.

\* \* \* \* \* \*

A State may cover medical care, including psychiatric care and services, as indicated in the State plan, during the month in which an individual enters an institution for tuberculosis or mental diseases when three conditions exist:

\* \* \* \* \* \*

Section 1905(a)(17)(B) of the Act precludes Federal matching of any payments for medical care given to patients in an institution for tuberculosis or mental diseases who are in the 21 through 64 years of age group. As an exception to this provision, based on administrative convenience, FFP is available for medical care and services to an otherwise eligible individual, regardless of age, as indicated in the State plan during the first month of institutionalization (Senate Report No. 404, Part I, 89th Congress, 1st Session (1965) at 82).

We are in the process of reexamining this area and will notify you if our development results in a policy revision.

there was some difference of opinion about this policy with HHS. An HHS report issued in April 1983, while the IDPA's claims were being reviewed, indicates that in 1982 HHS decided that FFP would not be available for IMD services provided to persons between twenty-one and sixty-five and that a "first month" exception was not available. The report states:

> The Bureau of Program Policy (BPP) issued policy memorandums [sic] (date, August 21, 1980 and November 17, and 24, 1980) that indicated that FFP was available for *both* the IMD services and all other non-IMD services covered under the State plan for otherwise eligible individuals 21–64 years of age during the first and last partial months of institutionalization in an IMD.
> On April 2, 1982, the Associate Administrator for Policy, based on a legal opinion by the Office of the General Counsel concluding that the proper reading of the regulations was to allow FFP during a partial month of eligibility only for services included in the State plan, issued a policy statement that superseded the previous memorandums [sic] on this subject. This memorandum stated that FFP is not available for the inpatient psychiatric care and services (IMD services) provid-

ed to individuals aged 21 to 64 during their partial months of institutionalization because such services would not meet the definition of medical assistance and would not be included in the State plan. However, the memorandum stated that, under the regulations, FFP is currently available for *all non-IMD* services covered under the State law for otherwise eligible individuals during their partial months of institutionalization in an IMD. (As noted above, the regulations now in clearance will preclude FFP for *all* services).

> In summary, the statute provides that no FFP is available for any care or services for individuals aged 21 to 64 from the date of admission to the date of discharge in an IMD. The regulations provide an exception, but only for non-IMD services during the month in which an individual becomes a patient in an IMD. The policy issuances have varied from allowing *both* IMD and non-IMD services during the partial months of institutionalization to the current issuance which only allows the non-IMD services during this period.

HHS relied on this report to disallow Illinois' claims for FFP. Similar claims

A December 1980 memorandum from the director of the Bureau of Program Policy to the Regional Administrator states:

> This responds to your inquiry of October 24 for clarification of Medicaid policy on the month of admission for individuals in the 21 through 64 years of age group who reside in an IMD/TB. Your request indicates that, based on Sections 1905(a)(14) and (16) and the corresponding regulations at 42 CFR 440.-140 and 440.160, Federal Financial Participation (FFP) is limited to inpatient hospital services for individuals 65 years of age or over in an IMD/TB, or to inpatient psychiatric hospital services for individuals under age 21.
> We concur with your interpretation of policy for those particular groups. However, as indicated in our previous memorandum of August 21, FFP is available for medical care, including psychiatric care and services provided to an individual in the 21 through 64 years of age group, during the month in which an individual enters an IMD/TB (Senate Report No. 404, Part I, 89th Congress, 1st Session (1965) at 82; Regulation at 42 CFR

435.1008(b)). The inpatient per diem services are covered under the Medicaid program during that partial month in the same manner as the inpatient per diem services are covered in an IMD/TB for the 65 years of age or over group. The States should be informed that FFP may be claimed for those services without the risk of disallowance.

Similarly, a December 1980 letter from a Regional Administrator to a New York State administrator states:

> The current Federal interpretation is that these Medicaid eligible individuals continue to be eligible for medical care, including psychiatric care and services with Federal financial participation during the remainder of the month in which the individual enters an institution for mental disease which meets Title XIX requirements for participation. Based on administrative convenience, our policy for the month of discharge from an institution for mental disease is that Federal financial participation is available for medical care and services to an otherwise eligible individual back to the beginning of that month.

made by at least five other states were also disallowed.

## III.

The IDPA argues that prior to 1982 HHS had a policy of allowing FFP for IMD services for persons between twenty-one and sixty-five during the first partial month of institutionalization and that this policy was consistent with Title XIX. Further, the IDPA argues that HHS wrongfully deprived Illinois of federal funds by retroactively applying a new interpretation of 42 C.F.R. § 435.1008(b). Because we decide that HHS could retroactively apply a new interpretation of section 435.1008(b), we need not decide whether HHS formerly had a policy of allowing such claims or whether such a policy would be consistent with the Social Security Act.

■ Retroactive application of a new interpretation of an administrative regulation is subjected to stricter scrutiny than prospective application. *See Daughters of Miriam Center for the Aged v. Mathews*, 590 F.2d 1250, 1259 (3d Cir.1978). An "administrative agency may not apply a new rule retroactively when to do so would unduly intrude upon reasonable reliance interests." *Heckler v. Community Health Services, Inc.*, 467 U.S. 51, 104 S.Ct. 2218, 2224 n. 12, 81 L.Ed.2d 42 (1984); *see NLRB v. Bell Aerospace Co.*, 416 U.S. 267, 295, 94 S.Ct. 1757, 1772, 40 L.Ed.2d 134 (1974); *Atchison, T. & S.F. Ry. Co. v. Wichita Board of Trade*, 412 U.S. 800, 807–08, 93 S.Ct. 2367, 2374–75, 37 L.Ed.2d 350 (1973) (plurality opinion); *SEC v. Chenery Corp.*, 332 U.S. 194, 203, 67 S.Ct. 1575, 1580, 91 L.Ed. 1995 (1947); *Daughters*, 590 F.2d at 1260 ("retroactive laws interfere with the legally-induced and settled expectations of private parties to a greater extent than do prospective enactments").

This court has stated that "[i]n analyzing whether any manifest injustice would result from retroactive application of a rule, we consider the reliance of the parties on pre-existing law, the effect of retroactivity on accomplishing the purpose of the law, and any injustice arising from retroactive application." *NLRB v. Chicago Marine Containers, Inc.*, 745 F.2d 493, 499 (7th Cir.1984); *see, e.g., Local 900, International Union of Electrical, Radio & Marine Workers v. NLRB*, 727 F.2d 1184, 1194–95 (D.C.Cir.1984); *Daughters*, 590 F.2d at 1260 (One should compare "the public interest in the retroactive rule with the private interests that are overturned by it."). The Supreme Court has mandated such a balancing of interests:

> [S]uch retroactivity must be balanced against the mischief of producing a result which is contrary to a statutory design or to legal and equitable principles. If that mischief is greater than the ill effect of the retroactive application of a new standard, it is not the type of retroactivity which is condemned by law.

*SEC v. Chenery Corp.*, 332 U.S. at 203, 67 S.Ct. at 1580. Further, the Third Circuit has noted that "retroactive rules designed to cure defects in regulatory schemes, such as the medicare program, are often sustained because the 'interest in the retroactive curing of such a defect in the administration of government outweighs the individual's interest in benefiting from the defect.' " *Daughters*, 590 F.2d at 1260 (footnote omitted) (quoting Hochman, *The Supreme Court and the Constitutionality of Retroactive Legislation*, 73 Harv.L.Rev. 692, 705–06 (1960) ).

■ In this case any reliance interest of the IDPA is outweighed by the Secretary's interest in retroactively applying its current interpretation of the regulation. A critical question is how the conduct or practices of the IDPA would have been different if the current interpretation of the regulation had applied from the start. *See Daughters*, 590 F.2d at 1262. The district court found that Illinois would have provided the services in question regardless whether it received FFP. Such services are traditionally the responsibility of the states. S.Rep. No. 404, 89th Cong., 1st Sess., *reprinted in* 1965 U.S.Code Cong. & Ad.News 1943, 2084. Further, this is not a case in which HHS is demanding a refund

from the IDPA or assessing a fine. *See Daughters*, 590 F.2d at 1263.

Although the district court found that HHS had changed its official policy in interpreting the regulation, we think it is unnecessary for us to assess the formality or definitiveness of its policy issuances. We note that the language of the statute seems reasonably clear. Certainly, HHS's present interpretation of it is reasonable. We also note the HHS did not disburse funds to any state based on the "first month" provision of the regulation. We doubt that the IDPA could have felt entirely assured that FFP would be available for the services in question and, as we have noted, there is no indication that it acted in reliance on the liberal interpretation of the law. It would be only a slight exaggeration to say that the IDPA's expectation based on the Regional Representative's statement and the Regional Administrator's letter, "would seem to have nothing to recommend it other than the traditional desire to take advantage of a loophole." *Daughters*, 590 F.2d at 1261 (quoting *Adams Nursing Home, Inc. v. Mathews*, 548 F.2d 1077, 1081 (1st Cir.1978)).

We affirm the district court's grant of defendant's motion for summary judgment.