The **CONSTRUCTION INDUSTRY WELFARE FUND OF ROCKFORD, IL** and the **Construction Industry Retirement Fund of Rockford, Plaintiffs,**

v.

**George M. JONES, d/b/a George M. Jones, Defendant.**

No. 84 C 20026.

United States District Court, N.D. Illinois, W.D.

Sept. 8, 1987.

---

**292**

Richard E. Lieberman and James M. Gecker, and Ross & Hardies, Chicago, Ill., for defendant, George M. Jones.

Marc M. Pekay, Chicago, Ill., for plaintiffs.

## ORDER

ROSZKOWSKI, District Judge.

Before the court is the plaintiff's motion to secure an updated audit. Based upon the briefs and for the reasons set forth below, the court denies the motion.

## FACTS

Plaintiff Trust Funds brought suit against George M. Jones pursuant to section 301 of the National Labor Relations Act, 29 U.S.C. § 185(a), and section 502 of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1132. The plaintiff alleges that the defendant entered into a pre-hire agreement with the union on July 1, 1974, which obligated the defendant to make payments to an employee trust fund. On April 1, 1984, the defendant George Jones sent a letter to the union purporting to void unilaterally the collective bargaining agreement. In its complaint, the plaintiff seeks recovery of fringe benefits allegedly due from June 1, 1974 to April 1, 1984, the date of the purported repudiation.

The plaintiff filed its complaint in 1984 and for these past three years it appears that both parties have considered the defendant's repudiation of the collective bargaining agreement to have been effective. Six months ago, the National Labor Relations Board ruled that an employer cannot repudiate a prehire agreement prior to the end of the contract term absent an election. *John Deklewa and Sons*, 282 NLRB 184, 124 LRRM 1185 (BNA), *appeal pending*, No. 87–3192 (3rd Cir. March 24, 1987). The NLRB decision is contrary to well-established law. *See, Jim McNeff, Inc. v. Todd*, 461 U.S. 260, 271–72, 103 S.Ct. 1753, 1759, 75 L.Ed.2d 830 (1983) (holding that a § 8(f) prehire agreement is subject to repudiation until the union establishes majority status.)

In light of *Deklewa*, the plaintiff seeks to secure an updated audit of the defendant company. That audit would cover the period of time beginning April 1, 1984 and ending May 31, 1986. The plaintiff's argument is that, under *Deklewa*, the defendant's attempted repudiation was ineffective. Accordingly, the plaintiff contends that the defendant's contractual obligation to pay fringe benefits continued through May 31, 1986.

Obviously, under this theory the plaintiff will need not only an opportunity to conduct an updated audit to determine damages, but will need also to amend its complaint to conform to the proof. The import of the motion to secure an updated audit now becomes obvious. If the court grants the motion it is in effect allowing the plaintiff to proceed under the *Deklewa* theory, the result of which could be the doubling of

the defendant's liability. (Defendant's Memorandum in Opposition, page 1). The plaintiff's motion, then, raises the issue of whether *Deklewa* should be applied retroactively to the present case to invalidate the defendant's 1984 repudiation.

## DECISION

█ The *Deklewa* board announced that it will apply the new 8(f) principle to the case pending before it "and to all pending cases in whatever stage." 282 NLRB 184. (quoting *Deluxe Metal Furniture Co.*, 121 NLRB 995, 1006–1007 (1958).) The plaintiff in its brief insists that this court apply the new rule to the present case because the Board "has specifically held that *Deklewa* is to be applied retroactively." (Plaintiff's Memorandum in Support, p. 3). This court notes, however, that it is not bound by the Board's views on retroactive application. *N.L.R.B. v. Chicago Marine Containers, Inc.*, 745 F.2d 493, 499 (7th Cir. 1984). Nevertheless, our court of appeals has emphasized that "it is appropriate to allow the agency to decide in the first instance whether giving the change retroactive effect will best effectuate the policies under the agency's governing Act." *Id.* at 498. In other words, this court must give due deference to the intent of the Board on the issue of retroactivity. *Id.* at 498. As will be shown, the Board has expressed no intent as to the application of the new rule in cases pending at the federal district court level.

In announcing that it will apply the rule in *Deklewa* retroactively to "all pending cases", the Board cites as authority for retroactive application its earlier decision in *Deluxe Metal Furniture Co.*, 121 NLRB 995, 1006–07 (1958). The statement in *Deluxe Metal* that new rules of law should be applied to all pending cases follows immediately a definition of pending as "any other case which has not yet been decided, because it has not reached the Board's level or is at one of the other stages of the administrative process such as the hearing." 121 NLRB at 1006. Clearly, the *Deklewa* Board intended that its new rule apply retroactively to cases pending at the administrative level. Nowhere in *Deklewa*, however, does the Board express the view that retroactive application is proper in cases pending in the federal district courts. Consequently, the *Deklewa* Board's view on retroactivity is at best unhelpful in the present case and clearly is not binding on this court.

This court may, nevertheless, apply the *Deklewa* rule to the present case if application would do no manifest injustice. *NLRB v. Chicago Marine Containers Inc.*, 745 F.2d 493, 499 (7th Cir.1984). In determining whether manifest injustice would result, the court considers the reliance of the parties on pre-existing law and the effect of retroactivity on accomplishing the purpose of the law. *Chicago Marine*, 745 F.2d at 499.

The parties do not dispute that at the time the defendant sent its repudiation letter the pre-existing law allowed an employer to repudiate pre-hire agreements prior to the union's attainment of majority status. Indeed, the plaintiff in its brief characterizes the *Deklewa* holding as a reversal of existing law: "an employer in the construction industry *can no longer* unilaterally void a collective bargaining agreement merely by forwarding a letter to the union." (Plaintiff's memorandum in support, page 1) (emphasis supplied). The court notes that a majority of the Board considers the pre-existing law to have been uncertain. *Deklewa*, 282 NLRB 184. However, at least one member of the Board disagrees and in his concurrence declares the *Deklewa* holding to be an "abrupt" departure from past precedent. 282 NLRB 184 (Stephens, concurring). This court agrees with Member Stephens.

In 1978, six years before repudiation in the present case, the Supreme Court held that pre-hire agreements in the construction industry are voidable until the union reaches majority status. *N.L.R.B. v. Local 103, International Association of Bridge, Structural and Ornamental Iron Workers, (Higdon)* 434 U.S. 335, 345–46, 98 S.Ct. 651, 657–58, 54 L.Ed.2d 586 (1978). And in 1983 our High Court declared that such an agreement remains binding until repudiat-

ed by either party. *Jim McNeff, Inc. v. Todd*, 461 U.S. 260, 103 S.Ct. 1753, 75 L.Ed.2d 830 (1983). The federal court cases following *McNeff* and *Higdon* are legion. *See e.g., Trustees of Colorado State Iron Workers v. A & P Steel, Inc.*, 812 F.2d 1518, 124 LRRM 2878 (10th Cir. 1987); *Carpenters v. J.L.M. Construction Co.*, 809 F.2d 594; 124 LRRM (BNA) 2561 (9th Cir.1987); *IBEW Local 441 v. KBR Electric*, 812 F.2d 495 (9th Cir.1987); *New Mexico Dist. Council of Carpenters v. Jordan & Nobles Construction Co.*, 802 F.2d 1253 (10th Cir.1986); *Ion Construction Co. v. District Council of Painters*, 803 F.2d 1050 (9th Cir.1986); *Carpenters Local 2247 v. Endicott Enterprises, Inc.*, 806 F.2d 918 (9th Cir.1986); *Painters Local Union No. 164 v. Epley*, 764 F.2d 1509 (11th Cir.1985), *cert. denied*, 475 U.S. 1120, 106 S.Ct. 1636, 90 L.Ed.2d 182 (1986); *NLRB v. Haberman Construction Co.*, 641 F.2d 351 (5th Cir. 1981) (*en banc*); *Ironworkers, Local 103 v. Higdon Construction Co.*, 739 F.2d 280 (7th Cir.1984); *Washington Area Carpenters' Welfare Fund v. Overhead Door Co.*, 681 F.2d 1 (D.C.Cir.1982) *cert. denied*, 461 U.S. 926, 103 S.Ct. 2085, 77 L.Ed.2d 296 (1983); *Cable Guide Railing Constr. Co. v. Ironworkers*, 543 F.Supp. 405 (W.D.Pa. 1982); *William R. Nash, Inc. v. Local 719*, 653 F.Supp. 1016, 124 LRRM (BNA) 3030 (S.D.Fla.1985).

The NLRB, too, has applied section 8(f) in the same manner as have the courts. *See, e.g., Pacific Erectors, Inc.*, 256 NLRB 421 (1981) *enf'd.*, 718 F.2d 1459 (9th Cir. 1983); *Higdon Construction Co.*, 216 NLRB 45 (1975); *Irvin McKelvy Co.*, 194 NLRB 52 (1971); *Ruttman Construction Co.*, 191 NLRB 701 (1971); *R.J. Smith Construction*, 191 NLRB 693 (1971).

■ In light of the foregoing, this court determines that at the time the defendant in the present case repudiated the pre-hire agreement,[1] the existing law clearly allowed either party to terminate unilaterally the agreement prior to the union's attainment of majority status. Retroactive application of the Board's *Deklewa* rule would

effectively punish the defendant for doing an act which was legally sanctioned at the time it was committed. The injustice of punishing the defendant is warranted only if retroactive application would greatly advance the purpose of the new rule. *Chicago Marine*, 745 F.2d at 499. Upon inspection, it becomes clear that retroactive application in the present case would not effectuate the policies underlying the *Deklewa* rule.

In its decision, the Board offers as support for its new rule two "countervailing interests": (1) to hold "parties to the terms and conditions of 8(f) contracts which are voluntarily entered into"; and (2) to "serve better the fundamental statutory policies of employee free choice and labor relations stability." 282 NLRB 184.

Advancement of these purposes through retroactive application in the present case is questionable at best. For instance, rather than holding the parties to their voluntarily assumed obligations, retroactive application of the new rule in the present case could, instead, undermine the prior contract between the parties. The right to repudiate a section 8(f) agreement is surely a key factor upon which parties rely in entering new contracts and in modifying existing ones. Likewise, the beneficial effect of retroactive application on the stability of the relationship between the parties is dubious. Even if the court were to hold that, pursuant to *Deklewa*, the defendant's repudiation was ineffective, it appears that the contractual relation between the parties has since terminated for other reasons. The stabilizing effect of retroactive application on the relations between the parties would, therefore, be negligible.

In light of the defendant's reliance on pre-existing law and in light of the questionable effect retroactivity would have on the advancement of policies underlying the new rule, the court determines that it would be a manifest injustice to the defendant to apply the Board's new rule to the present case. On the eve of trial, this court calls upon its authority under Federal

---

1. The court makes no finding of fact as to the existence of a contract nor as to the actions said to constitute repudiation or attempted repudiation.

Rule of Civil Procedure 15(a) in restricting the parties to the theory of the case which the plaintiff has propounded these past three years.

The motion to secure an updated audit is denied.