[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The parties to this administrative appeal are CSEA, Inc./SEIU/Local 760, AFL-CFO, East Hartford Municipal Employees Association ("Union"), the State of Connecticut, State Board of Labor Relations ("CSBLR") and the Town of East Hartford ("Employer").
The Union brings this administrative appeal from a CSBLR decision dismissing its complaint under the Municipal Employees Relations Act ("MERA") General Statutes § 7-467, et seq. The Union argues that the Employer violated MERA by contracted out custodial work at the East Hartford Town Hall.
The appeal is authorized pursuant to the Uniform Administrative Procedures Act (UAPA), § 4-166, et seq. The CSBLR decision was issued on March 21, 1996. The appeal was timely filed on May 6, 1996. The CSBLR's answer and record CT Page 4551 were filed on June 3, 1996. The Employer's answer was filed April 17, 1997. Briefs were filed by the Union on June 23, 1997, the CSBLR on September 4, 1997, and the Employer on September 5, 1997. The parties were heard in oral argument on March 31, 1998.
The Union is an employee organization and the Town of East Hartford is an employer under MERA. The Union and Employer have at all relevant times been parties to a collective bargaining agreement for a bargaining unit which includes custodians.
The CSBLR is authorized under MERA, § 7-471, to determine whether a prohibited practice has been committed by an employer.
The Union on September 19, 1994 filed a complaint with the CSBLR alleging that the Employer had violated MERA, § 7-470
(4), by unlawfully contracting out bargaining unit work from the bargaining unit of employees represented by the Union. The employer contested the allegation.
The dispute was submitted to the CSBLR on a Full Stipulation of Facts and exhibits by agreement of the Union and Employer. The parties filed briefs and submitted the case on the stipulation, exhibits, and briefs.
In its appeal the plaintiff essentially raises two issues: 1) that the CSBLR applied the wrong analytical standard to the subcontracting out claim; and 2) that there is not substantial evidence in the record supporting the decision.
The Union correctly argues that the CSBLR decision inCity of New Britain, Dec. No. 3290 (1995); was a substantive change in the analysis of a subcontracting out case. Prior to the New Britain decision an employer would have to prove that the work at issue was exclusively bargaining unit work. Employers were able to defend such complaints with a shared work defense.[1] In its New Britain decision the CSBLR adopted in place of the shared work theory "an analysis that is truly based on past practice."[2] New Britain, 36.
The rationale for the departure represented by NewBritain is related to its unusual factual presentation and CT Page 4552 certain inconsistencies in the development of Connecticut labor law:
 We first note that this case is unlike any that we have been confronted with previously. Specifically, this is the first case in which the Employer undisputedly changed the type of nonbargaining unit personnel to whom it assigned the work in dispute. Our review has not revealed a prior case in which the work in question was arguably previously "shared" to some extent with non-bargaining unit part time employees of the Employer and then later assigned to a
subcontractor. (Footnote 22: We note the cases of City of New Britain (2108) and City of Stamford, Decision No. 2194 (1983) in which there appear vaguely similar facts. However, neither of these cases squarely presented the situation in the current case.) Here the Employer undisputedly used some part time, non-bargaining unit employees, in the past, to perform some custodial work in the City. However, the Employer had not previously used subcontractors to perform custodial work. In the summer of 1992, after renovations had been completed on the City Hall, the City hired subcontractors to clean the City Hall at night. Not only had subcontractors not previously performed custodial work in the City, but only bargaining unit employees had previously cleaned the City Hall. Thus, we have here a very unique set of facts that simply cannot be analyzed using our more recent, often inconsistent pronouncements. The following discussion focuses the problem.
 Upon first glance at this case, it is apparent there was no bargaining unit wide practice of the custodial work being performed exclusively by the bargaining unit and therefore, pursuant to the Board's statement in Naugatuck
(2534), the complaint might be summarily dismissed because "even minimal erosion of exclusivity would suffice to establish a practice of sharing". Naugatuck (2534) at 5. That conclusion might arguably be supported by the language in other CT Page 4553 previously discussed cases, which indicate that, as long as the work at issue has been substantially shared in the past with non-bargaining unit personnel, a subsequent reassignment of that work will not constitute a violation of the Act. These cases provide some support for the proposition that the Employer is free to assign the work to anyone once it has been shared in any manner.
 On the other hand, we must contend with the often repeated language from any of our other cases, which states that, if the work has been substantially shared in the past, a continuation of such sharing does not violate the Act. See Torrington (2172) and cases cited therein. This language indicates that only a continuation of the same kind of sharing will excuse the employer's bargaining obligation. Further, in City of New Haven (1879), we determined that an increase in the amount of sharing triggered the bargaining obligation. Thus, it is certainly arguable, under this line of cases that a unilateral change in the manner or scope of sharing would constitute a violation and that, here, the shift from using some part time, non-bargaining unit employees to using subcontractors to replace an entire shift of workers in the City Hall does constitute such a violation.
 Added to the above are the cases in which we have talked at length about the definition of "bargaining unit work". Under certain of these cases (see e.g., MDC (3116)), the Union should not be allowed to "micro-divide" the work in dispute to demonstrate that the work at the New Britain City Hall is viewed differently from other custodial work, in order to prove a violation. On the other hand, the custodial work at the City Hall had been performed solely by bargaining unit members in the past and there is at least an argument that such work is a discrete and recognizable job duty.
 In sum, in reviewing the facts of this case, we realized that none of the pronouncements in our CT Page 4554 recent case law was adequate for analysis of this matter. In so deciding we were influenced by the fact that the action of subcontracting in this case was inherently different than any past action of the employer and yet, this inherent difference could not be addressed using our current case law because our current law does not contain a consistent focus on past practice and unilateral change. When we realized that this type of case is precisely the type of difficult situation that is not capable of logical analysis under our current standards, we reached into our case law and to early federal case law in search of a more logical approach. In doing so, we developed this standard, which is based on a past practice/unilateral change framework: which finds its origins in the early federal model and which does not contain the inconsistencies borrowed from shared work/exclusivity doctrine. We also found that by engaging in this review and looking for the correct standard for this particular case, that we were able to see how this standard should also be applied to our future subcontracting/transfer cases.
New Britain, pp. 39-40.
The CSBLR has in subsequent decisions consistently refused to apply the New Britain standard to cases in which the underlying facts preceded the date New Britain was issued: April 6, 1995. See Town of Wethersfield, Dec. No. 3337 (1995); Naugatuck Board of Education, Dec. No. 3340 (1995); City of Torrington, Dec. No. 3344 (1995); and Townof Plymouth, Dec. No. 3361 (1996).
Connecticut case law does not specifically address the issue of an agency's discretion to decide the retroactivity of its decisions. See CLP v. Tax Commissioner,169 Conn. 58 (1975); Hartford Electric Light Co. v. Sullivan,161 Conn. 145 (1971). New Haven v. New Haven Water Co.,132 Conn. 496, 570 (1946). The court thus looks to federal law for guidance. State Board of Education v. State Board ofLabor Relations, 217 Conn. 110, 120 (1991). Under federal caselaw, an administrative agency's determination as to the retroactivity of its decisions is generally discretionary CT Page 4555 with the agency. District Lodge 64 v. NLRB, 949 F.2d 441
(D.C. Cir. 1991); NLRB v. Chicago Marine Containers, Inc.,745 F.2d 493, 499 (7th Cir. 1984); Retail Wholesale andDepartment Store Union v. NLRB, 466 F.2d 380 (D.C. Cir. 1972); Construction Industry Welfare Fund v. Jones,672 F. Sup. 291 (N.D.S.Ct. 1987).
The scenario presented in this case was unlike that presented to the Labor Board in the New Britain case. The history was unclear as to whether the use of the cleaning service by East Hartford was as clear a departure as the NewBritain decision. The retention of the remaining bargaining unit member also reflected a substantially different impact on the respective bargaining units. Although there was some lack of clarity pre-New Britain in subcontracting cases, the shared work doctrine was the standard prior to April 7, 1995. In this case the subcontracting actions occurred in 1994. It was not improper for the labor board to apply the "shared work" standard to these facts which arose prior to 1995.
The plaintiff's evidentiary challenge is measured by the "substantial evidence" rule.
"Judicial review of an administrative agency decision requires a court to determine whether there is substantial evidence in the administrative record to support the agency's findings of basic fact and whether the conclusions drawn from those facts are reasonable. . . . Neither this court nor the trial court may retry the case or substitute its own judgment for that of the administrative agency on the weight of the evidence or questions of fact." (Citations and internal quotation marks.) Dolgner v.Alander, 237 Conn. 272, 280 (1996).
"The substantial evidence rule governs judicial review of administrative fact-finding under the UAPA. General Statutes § 4-183 (j)(5) and (6). An administrative finding is supported by substantial evidence if the record affords a substantial basis of fact from which the fact in issue can be reasonably inferred. The substantial evidence rule imposes an important limitation on the power of the courts to overturn a decision of an administrative agency . . . and to provide a more restrictive standard of review than standards embodying review of weight of the evidence or CT Page 4556 clearly erroneous action." (Citations and internal quotation marks omitted; footnote omitted.) Dolgner v.Alander, supra, 237 Conn. 281. Substantial evidence "is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." (Citations and internal quotation marks omitted.) Id.
In this case there was no testimony, only the "Full Stipulation of Facts "[3]
The Union filed its complaint on September 19, 1994. The Stipulation indicated that until 1992 all contracted work was performed by plaintiff's bargaining unit members. (Stip. # 1.)
In its decision, the labor board's essential conclusion on the facts was as follows:
 [W]e find that the Union has failed to carry its burden, because the stipulation of facts does not establish that the Town Hall custodial work was performed exclusively by the bargaining unit prior to the subcontracting at issue. In this regard, although the stipulation establishes that prior to 1992, custodial work was performed exclusively by the bargaining unit, the stipulation also states that "heavy custodial work" is performed by non-bargaining unit personnel. We simply cannot draw any real conclusions from these statements since the facts fail to establish when the heavy custodial work was assigned to non-bargaining unit employees and for how long it has been so assigned. Additionally, we do not know how the remainder of the custodial work was assigned between 1992 and 1994. The stipulation is silent in this regard and we note the somewhat surprising fact that from late fall 1993 until July 1, 1994 there appears to have been only one custodian assigned to the Town Hall. The parties offer no evidence on this subject and we cannot draw any conclusions therefrom.
CT Page 4557
Decision # 3375, p. 4.
The labor board's construction of the facts is not the only one possible, but is certainly one which is supported by substantial evidence in the record (Full Stipulation of Facts). The uncertain status of the Town Hall custodial work after 1992 is evidenced by the record.
The decision is also supported by the lack of immediate bargaining unit impact by the subcontracting out of some of the Town Hall custodial work. There remains one bargaining unit member performing the Town Hall custodial work both immediately before and after the subcontracting decision.
The decision is affirmed and the appeal is dismissed.
Robert F. McWeeny, J.