R.W. GRANGER & SONS, INC., Plaintiff,

v.

EASTERN MASSACHUSETTS CARPENTERS AND CARPENTERS LOCAL 275 OF the UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA, Defendants.

Civ. A. No. 87–2174–H.

United States District Court, D. Massachusetts.

April 21, 1988.

James F. Grasso, O'Reilly & Grasso, Framingham, Mass., for plaintiff.

Thomas F. Birmingham, Flamm & Birmingham, Boston, Mass., for defendants.

## MEMORANDUM AND ORDER

HARRINGTON, District Judge.

This matter is before the Court on the parties' cross motions for summary judgment. The underlying dispute on which this lawsuit is based is a grievance filed by the Defendant on December 8, 1986, contending that the Plaintiff violated the parties' collective bargaining agreement. For the reasons stated below, Defendant's motion for summary judgment is granted.

## I. STATEMENT OF FACTS

The material facts pertinent to the instant motions are not in dispute. The Plaintiff R.W. Granger & Sons, Inc., ("Granger") is a general contractor engaged in the construction industry. The Defendant Eastern Massachusetts Carpenters and Carpenters Local 275 (the "Union") is a voluntary coalition of ten local unions all of whom are affiliated with the United Brotherhood of Carpenters and Joiners of America. From 1976 until a date to be resolved by this Order, the Association of General Contractors of Massachusetts, Inc. ("AGC"), a trade association of general construction contractors, has represented Granger in collective bargaining with the Union. The AGC is a multi-employer bargaining unit of which Granger was a member.

Sometime after September 5, 1986, Granger subcontracted concrete form work at Granger's Babson College job site from a subcontractor who did not have an agreement with the Union. The Union notified Granger that the subcontract violated a collective bargaining agreement to which Granger and the Union were bound. Granger replied that it was not bound by any collective bargaining agreement prohibiting the subcontract in question.

From 1976 to at least 1983, Granger authorized AGC to negotiate on its behalf with various unions, including the Eastern Massachusetts Carpenters. The Union and AGC executed a collective bargaining agreement effective August 1, 1983 through May 31, 1985. The parties agree that Granger was bound by the 1983–1985 agreement.

The termination clause of the 1983–1985 agreement states:

> This agreement will expire May 31, 1985, but if neither party gives notice in writing to the other party on or before March 31, 1985 then this agreement will continue in effect until May 31, 1986, and so on each year thereafter unless on or before March 31st of each year thereafter a notice is given by either party ...

In 1985 Granger did not give the Union written notice of a desire to negotiate new terms to the agreement. Accordingly, pursuant to the termination clause, the agreement continued for another year.

In 1984 Granger withdrew its bargaining authorization from AGC, but neither Granger nor AGC gave the Union written notice of the withdrawal. AGC, however, did not include Granger on any list it presented to any union representing contractors who had authorized AGC to bargain for them.

Early in 1986 the Union notified AGC of its intent to negotiate a successor agreement. The AGC and the Union arrived at an agreement effective June 1, 1986 through May 31, 1989. Granger's name was not on the list of contractors which AGC presented to the Union as having authorized AGC to bargain on their behalf for the 1986–1989 agreement. On September 5, 1986, Granger provided written notice directly to the Union for the first time of its withdrawal from the AGC, and of its repudiation of any collective bargaining agreement which it had with the Union.

In March 1987 an arbitration proceeding was held before Arbitrator Edward C. Pinkus pursuant to the grievance. In its Answer to the Complaint in Arbitration and at oral argument, Granger took the position that the Arbitrator had no jurisdiction to determine whether a contract existed between the parties. Granger filed an Answer to the Union's Complaint in Arbitra-

tion under protest to protect itself against an ex parte determination by the Arbitrator.

On July 31, 1987, Arbitrator Edward C. Pinkus determined that Granger was bound to the 1986–1989 collective bargaining agreement, and that it had violated that agreement by subcontracting concrete form work to a subcontractor who did not have a collective bargaining agreement with the Union.

Plaintiff filed this suit in August, 1987 to seek a determination that the arbitrator exceeded his jurisdiction in entering the award for the Union, and to vacate the arbitrator's award. Plaintiff also prays that this Court declare that it is not bound to the 1986–1989 collective bargaining agreement.

## II. LAW AND ANALYSIS

### A. *Issues*

There are four issues before this Court: (1) whether the plaintiff submitted itself to the Arbitrator's jurisdiction for the purposes of determining whether or not a collective bargaining agreement existed between the parties; (2) whether the plaintiff general contractor continued to be bound to the labor contract which the defendant negotiated through the multi-employer unit solely because the plaintiff failed to provide the defendant Union with notice of its withdrawal from the multi-employer unit; (3) whether the National Labor Relations Board's (the "Board") ruling in *John Deklewa & Sons*, 282 N.L.R.B. No. 184, 124 L.R.R.M. 1185 (1987), *aff'd sub nom. International Association of Bridge, Structural and Ornamental Iron Workers v. NLRB (Deklewa)*, 843 F.2d 770 (3d Cir. 1988), which reversed previous case law by holding that pre-hire agreements pursuant to Section 8(f) of the National Labor Relations Act (the "Act") are no longer voidable at will by either party, is controlling law; and (4) if *Deklewa* is controlling, should it be applied retroactively.

### B. *Arbitrability*

■ Arbitrability is the determination of the arbitrator's jurisdiction to resolve a grievance on the merits. The threshold issue of whether there is an obligation to arbitrate a dispute is a matter of contract and is for a court, not an arbitrator to decide. *AT & T Technologies Inc. v. Communication Workers of America*, 475 U.S. 643, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986). The parties may, however, submit the substantive arbitrability issue to the arbitrator. *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 583 n. 7, 80 S.Ct. 1347, 1353 n. 7, 4 L.Ed.2d 1409 (1960); *Metal Products Workers Union, Local 1645 v. Torrington Co.*, 358 F.2d 103 (2d Cir.1966). If the Court determines that the parties did agree to have the arbitrator resolve the arbitrability issue, the judicial review of the arbitrator's ruling on substantive arbitrability should be as circumspect as its review of the arbitrator's resolution on the merits of the grievance. *See Piggly Wiggly Operators' Warehouse Inc. v. Independent Truck Drivers Union Local No. 1*, 611 F.2d 580, 584 (5th Cir.1980); *Teamsters Local 117 v. Washington Employees Inc.*, 557 F.2d 1345, 1349–50 (9th Cir.1977). When the jurisdictional issue is not in question at arbitration, it will not be insulated from judicial review. *See Camden Industries Co. v. Carpenters Local Union No. 1688*, 353 F.2d 178, 180 (1st Cir.1965) (citing *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960)) (other citations omitted).

■ The plaintiff in the instant case was the respondent in the arbitration proceeding before Arbitrator Pinkus. While participating in the arbitration hearing on the merits of the underlying collective bargaining agreement claim, Granger explicitly preserved its right to challenge jurisdiction in federal court in the event of an adverse decision on the merits. See Plaintiff's Motion for Summary Judgment, attached Affidavit of R.W. Granger, attached letters from Plaintiff's attorney, James Grosso, to American Arbitration Association (January 16, 1987 and January 26, 1987) and attached Answer in Arbitration. The Union contends that whatever reservations Gran-

ger expressed prior to the submission of issues to Arbitrator Pinkus are irrelevant because the parties stipulated to the issue of whether Granger was bound by the 1986–1989 collective bargaining agreement and thus waived the issue of arbitrability. See Defendant's Answer, Attachment A at 1. (Arbitrator Pinkus' decision).

Granger and the Union submitted to the Arbitrator the question of whether Granger was bound to the collective bargaining agreement. Granger, however, reserved its right to have the issue of the Arbitrator's jurisdiction determined by the United States District Court.

The Court rules that participation in an arbitration hearing on the merits does not constitute a waiver of the right of review by the federal courts on the issue of arbitrability if the respondent in arbitration explicitly preserves its challenge to jurisdiction. *See Local 719, American Bakery Workers v. National Biscuit Co.*, 378 F.2d 918, 921–22 (3d Cir.1967); *Falstaff Brewing Corp. v. Local No. 153, International Brotherhood of Teamsters*, 479 F.Supp. 850, 857 (D.N.J.1978), *aff'd* 609 F.2d 501 (3d Cir.1979), *cert. denied*, 444 U.S. 1079, 100 S.Ct. 1030, 62 L.Ed.2d 763 (1980).

### C. *Notice*

■ The Union argued to the Arbitrator that Granger remained bound to any agreement between the AGC and the Union by virtue of Granger's failure to give proper notice to the Union of its desire to withdraw from the multi-employer bargaining unit (AGC) to which Granger historically belonged. The issue in dispute, according to the Union, is not whether the AGC was authorized to bargain on Granger's behalf with the Union, but rather whether Granger continued to be bound to the labor contract because of failure to provide the Union with written notice of its withdrawal as required by the contract.

Granger argued to the Arbitrator that if any collective bargaining agreement exists between the parties it was a result of the termination clause of the 1983–1985 agreement which required either party to give notice to the other party of its intent to change the terms and conditions of the contract within 60 days of the expiration of that agreement. As neither party gave the other written notice of such intended changes, the contract by its own operation continued from year to year until such time as either party notified the other. In the 1983–1985 collective bargaining agreement, however, Granger was not prohibited from subcontracting work to a subcontractor who did not have a collective bargaining agreement with the Union. Granger contends that since AGC had no authorization to commit Granger to the 1986–1989 collective bargaining agreement it could not violate that agreement.

This Court rules that Granger was bound by the terms of the 1986–1989 collective bargaining agreement negotiated between AGC and the Union. In *Retail Associates*, 120 N.L.R.B. 388, 395 (1958), the Board set forth the procedure for withdrawing from a multi-employer unit:

We would accordingly refuse to permit the withdrawal of an employer or a Union from a duly established multi-employer bargaining unit except upon adequate written notice given prior to the date set for modification as to the agreed upon date to begin the multi-employer negotiations.

Adequate written notice requires that notice must be given directly to the Union. Notice to the multi-employer unit alone does not constitute "adequate notice." *General Printing Company*, 263 N.L.R.B. 591, 592 (1982); *see also Local 145, International Ladies Garment Workers' Union v. Fashion Assoc.*, 596 F.Supp. 77 (D.N.J.1984). Although the Union may have had constructive notice that Granger had withdrawn authorization from the AGC, constructive notice is not sufficient. For an employer to withdraw from a multi-employer unit it must provide written notice to the union prior to the date established for modification of the collective bargaining agreement or prior to the date agreed upon to begin the multi-employer negotiations. *Hawaii Carpenters Trust Funds v. Waiola Carpenter Shop, Inc.*, 823 F.2d 289, 295 (9th Cir.1987).

The rules for withdrawal from a multi-employer unit are well known. Compliance is not difficult. "The purpose of the withdrawal rules is to promote stability in bargaining relationships, especially during the period negotiations are being conducted." *Waiola Carpenters Shop*, 823 F.2d at 295. Granger did not provide the Union with written notice of its withdrawal from the AGC before negotiations began for the 1986–1989 collective bargaining agreement and, therefore, it was bound by the terms of that agreement.

### D. *Pre-Hire Agreements*

■ The collective bargaining agreement between Granger and the Union was a pre-hire agreement as provided in Section 8(f) of the National Labor Relations Act, 29 U.S.C. Section 158(f).[1] Section 8(f) provides for pre-hire agreements in the construction industry and allows a general contractor and a union to enter into a collective bargaining agreement that will determine the wages, hours and working conditions of the general contractor's employees even though the general contractor has yet to hire those employees. Absent congressional recognition of the conditions peculiar to the construction industry, such agreements would be barred, as they are in all other industries, as violative of employee free choice.

In *NLRB v. Local 103, International Association of Bridge and Ornamental Iron Workers (Higdon)*, 434 U.S. 335, 344–45, 98 S.Ct. 651, 657–58, 54 L.Ed.2d 586 (1978) and *Jim McNeff, Inc. v. Todd*, 461 U.S. 260, 265–66, 103 S.Ct. 1753, 1756–57, 75 L.Ed.2d 830 (1983), the Supreme Court held that pre-hire agreements in the construction industry are voidable until the union reaches majority status. On September 5, 1987 Granger repudiated its pre-hire agreement with the Union. Granger contends that if it were bound by the 1986–1989 agreement it repudiated that agreement before it violated the subcontracting clause of the agreement and that the repudiation was lawful under then existing law.

*Higdon* resolved a conflict between the United States Court of Appeals for the District of Columbia and the Board. In *R.J. Smith Construction Co.*, 191 N.L.R.B. 693 (1971), *enf. denied sub nom. Local No. 150, International Union of Operating Engineers v. NLRB*, 480 F.2d 1186 (D.C. Cir.1973), the Board interpreted Section 8(f) to mean that until the Union is able to establish that it represents an uncoerced majority of the employees of the employer signatory to the pre-hire agreement, that pre-hire agreement is voidable by either party. *See also Ruttmann Construction Co.*, 191 N.L.R.B. 701, 702 (1971) ("pre-hire agreement is merely a preliminary step that contemplates further action for the development of a full bargaining relationship ...."). Although the D.C. Circuit rejected the *R.J. Smith* rule when that court denied enforcement in *Local No. 150 International Union of Operating Engineers v. NLRB*, 480 F.2d 1186 (D.C.Cir.1973), the Board continued to apply the *R.J. Smith* rule that pre-hire agreements were voidable at-will by either party to the agreement.

On February 20, 1987 the Board reversed its position regarding the at-will voidability of pre-hire agreements. In *John Deklewa and Sons*, 282 N.L.R.B. 184, 124 L.R.R.M. 1185 (1987), *enf. sub nom. International Association of Bridge, Structural and Ornamental Iron Workers v. NLRB (Deklewa)*, 843 F.2d 770 (3d Cir.1988), the Board ruled that an employer cannot repudiate a pre-hire agreement prior to the end of the contract term. The Board applied its rejection of the *R.J. Smith* rule and its reinterpretation of Section 8(f) in *Deklewa* retroactively.

---

**1.** It shall not be an unfair labor practice for an employer engaged primarily in the building and construction industry to make an agreement covering employees engaged (or who, upon their employment, will be engaged) in the building and construction industry with a labor organization of which building and construction industry employees are members

... because (1) the majority status of such labor organizations has not been established under the provisions of section 9 of the Act prior to the making of such agreement ... Provided ... That any [such] agreement shall not be a bar to a petition [for a representation election] filed pursuant to section 9(c)....

Relying on *Deklewa*, the Union argued that Granger may terminate the Granger–Union 1986–1989 collective bargaining agreement only upon the agreement's expiration in 1989. Granger argued that until such time as either an Appeals Court or the United States Supreme Court adopts the Board's ruling in *Deklewa, stare decisis* compels the finding that *Higdon* is controlling with respect to pre-hire repudiation.

The Supreme Court holding in *Higdon* that pre-hire agreements could be repudiated at-will was not based on the Supreme Court's independent finding that the Act required voidability of Section 8(f) agreements; rather the Court's decision in *Higdon* was based on deference to the Board's expertise:

> We have concluded that the Board's construction of the Act, although perhaps not the only tenable one, is an acceptable reading of the statutory language and a reasonable implementation of the purposes of the relevant statutory section ...

*Higdon*, 434 U.S. at 341, 98 S.Ct. at 656.

> The Board's resolution of the conflicting claims in this case represents a defensible construction of the statute and is entitled to considerable deference. Courts may prefer a different application of the relevant sections, but the function of striking that balance to effectuate national labor policy is often a difficult and delicate responsibility, which the Congress committed primarily to the National Labor Relations Board, subject to limited judicial review.

*Id.* at 350, 98 S.Ct. at 660.

The Supreme Court in *Higdon* was reviewing the Board's interpretation of Section 8(f) to determine if it was reasonable and consistent with the Board's statutory mandate and was not substituting its own interpretation of the statute.

"The Board has the primary responsibility for applying 'the general provisions of the Act to the complexities of industrial life.' " *Pattern Maker's League v. NLRB*, 473 U.S. 95, 114, 105 S.Ct. 3064, 3075, 87 L.Ed.2d 68 (1985) (*quoting Ford Motor Co. v. NLRB*, 441 U.S. 488, 496, 99 S.Ct. 1842,

1849, 60 L.Ed.2d 420 (1979) (citations omitted)). The issue of pre-hire agreements implicates the Board's expertise in labor relations and a reasonable construction of the Act by the Board is entitled to considerable deference. *NLRB v. City Disposal Systems, Inc.*, 465 U.S. 822, 830, 104 S.Ct. 1505, 1510–11, 79 L.Ed.2d 839 (1984) (citations omitted). The federal courts may not apply their own view of labor relations for that of the Board merely because the courts might prefer another view of the statute. *Ford Motor Company*, 441 U.S. at 497, 99 S.Ct. at 1849. Thus, the narrow decision before this Court is whether the Board's reinterpretation of Section 8(f) of the National Labor Relations Act is reasonable. Where the Board's interpretation of the Act is reasonable, it should not be rejected. *Ford Motor Co.*, 441 U.S. at 497, 99 S.Ct. at 1849; *see also NLRB v. K. Smith & Co., Inc.*, 569 F.2d 162, 167 (1st Cir.1977), *cert. denied*, 436 U.S. 957, 98 S.Ct. 3070, 57 L.Ed.2d 1122 (1977) (citations omitted).

The Board in *Deklewa* identified the two primary objectives of the Act as promotion and protection of employee free choice and labor relations stability. The Board observed that "a right of unilateral repudiation is so antithetical to traditional principles of collective bargaining under the Act, it seems likely that Congress would have expressly stated such a right if it intended to create one." *Deklewa*, 282 N.L.R.B. at ——, 124 L.R.R.M. at 1191 (footnote omitted). This Court rules that the Board's decision in *Deklewa* that pre-hire agreements sanctioned under Section 8(f) are not voidable at will was not an unreasonable interpretation of the Act. *See International Association of Bridge, Structural and Ornamental Iron Workers, Local 3 v. NLRB (Deklewa)*, at 775–76.

## III. RETROACTIVITY

■ The final issue before this Court is whether to apply the Board's new interpretation in *Deklewa* retroactively. The Board applied the *Deklewa* rule retroactively noting that its usual practice was to apply new policies and standards to all

cases no matter what stage in the litigation they had reached. 282 N.L.R.B. at ——, 124 L.R.R.M. at 1198. The federal courts are not bound by the Board's views on retroactive application. *International Association of Bridge, Structural and Ornamental Iron Workers, Local 3 v. NLRB (Deklewa)*, at 780 (quoting *NLRB v. Semco Printing Center, Inc.*, 721 F.2d 886, 892 (2d Cir.1983)); *NLRB v. Chicago Marine Containers, Inc.*, 745 F.2d 493, 499 (7th Cir.1984); *cf. Bradley v. School Board of the City of Richmond*, 416 U.S. 696, 711–12 n. 15, 94 S.Ct. 2006, 2016 n. 15, 40 L.Ed.2d 476 (1974); *Chicot County Drainage District v. Baxter State Bank*, 308 U.S. 371, 374, 60 S.Ct. 317, 318–19, 84 L.Ed. 329 (1940). Courts, however, should defer to an administrative agency's application of a newly adopted rule unless manifest injustice results. *NLRB v. New Columbus Nursing Home, Inc.*, 720 F.2d 726, 729 (1st Cir.1983) (citations omitted); *International Association of Bridge, Structural and Ornamental Iron Workers (Deklewa)*, at 780; *Semco Printing Center*, 721 F.2d at 892.

The Third Circuit in its ruling which enforced the Board's decision in *Deklewa* stated:

> While a decision to hold a new rule retroactive is not strictly a question of statutory interpretation, we are nevertheless persuaded that when the Board changes a rule and makes it retroactive, particularly when the Board assigns as its reasons for doing so the furtherance of the fundamental statutory policies of employee free choice and labor relations stability, the Board should be entitled to exercise its broadest power. (citation omitted). Thus unless the Board's retroactive application results in manifest injustice we will uphold the Board's order.

2. The Board has primary responsibility for applying the Act. While this Court might prefer not to apply *Deklewa* retroactively "the function of striking that balance to effectuate national labor policy is often a difficult and delicate responsibility, which the Congress committed primarily to the National Labor Relations Board, subject to limited judicial review." *NLRB v. Truck Drivers*, 353 U.S. 87, 96, 77 S.Ct. 643, 648, 1 L.Ed.2d 676 (1957).

*International Association of Bridge, Structural and Ornamental Iron Workers (Deklewa)*, at 780–81.

This Court holds that the application of the *Deklewa* rule to the present case will not result in manifest injustice. This Court, although sensitive that the retroactive application of the Board's *Deklewa* rule will punish Plaintiff Granger for doing an act which was legally sanctioned at the time it was committed, *see Construction Industry Welfare Fund v. Jones*, 672 F.Supp. 291, 292, 293 (N.D.Ill.1987) (refusing to apply the *Deklewa* rule retroactively), defers to administrative expertise, especially in view of the Third Circuit's recent holding in [2] *International Association of Bridge, Structural and Ornamental Iron Workers (Deklewa)*.

The retroactive application of the *Deklewa* rule to the plaintiff in this case will not result in manifest injustice. The plaintiff will simply be held to the terms and conditions of the 1986–1989 collective bargaining agreement to which it remained bound by failing to give proper notice to the Union of its withdrawal from the multi-employer unit. Moreover, Granger's reliance on the *R.J. Smith* rule that pre-hire agreements were voidable at will was not without risk. General Contractors who are members of a multi-employer unit are subject to the merger doctrine [3] for determining the majority status of its employees. Under the merger doctrine "the relevant unit of employees for determining the majority status of a Union was not those employees specifically employed by [Granger] but rather all other employees who were hired under the Association's agreement with the Union." *International Association of Bridge,*

3. [W]hen a single employer joins a multi-employer association and adopts that association's collective bargaining agreement, the single employer's unit merges into the multi-employer unit when the requisite inquiry into majority support occurs in that multi-employer unit.
*Deklewa*, 282 N.L.R.B. at ——, 124 L.R.R.M. at 1189 & n. 14. *See also Amado Electric*, 238 N.L.R.B. 37 (1978) (establishing the merger doctrine).

**30**

*Structural and Ornamental Iron Workers (Deklewa),* at 781.

Therefore at the time Granger repudiated the 1986–1989 collective bargaining agreement there was a substantial risk that the Union may have obtained majority status. Therefore, this Court finds no manifest injustice in applying *Deklewa* retroactively to this case.

## IV. ORDER

For the reasons stated in this Memorandum, the Court ORDERS as follows:

1. The Conclusion and Award of Arbitrator Pinkus in *Carpenters Local 275, AFL–CIO and R.W. Granger & Sons, Inc.,* is adopted by this Court.

2. R.W. Granger is directed to comply with the terms of the Arbitration award.

IT IS SO ORDERED.