871 F.2d 745
 130 L.R.R.M. (BNA) 3102, 57 USLW 2611,
111 Lab.Cas. P 11,062
 NATIONAL LABOR RELATIONS BOARD, Petitioner,
v.
W.L. MILLER COMPANY, Respondent,
Eastern Missouri Laborers District Council, Intervenor/Petitioner.
EASTERN MISSOURI LABORERS DISTRICT COUNCIL, Petitioner,
v.
W.L. MILLER COMPANY,
National Labor Relations Board, Respondent.
 Nos. 87-2332, 87-2420.
 United States Court of Appeals,
Eighth Circuit.
 Submitted June 16, 1988.
Decided March 29, 1989.
 
 Laurence Gold, Washington, D.C., for Eastern Missouri Laborers Dist. council.
 John Ferguson, Washington, D.C., for N.L.R.B.
 Jack L. Whitacre, Kansas City, Mo., for W.L. Miller Co.
 Before JOHN R. GIBSON, Circuit Judge, BRIGHT, Senior Circuit Judge, and STUART*, Senior District Judge.
 JOHN R. GIBSON, Circuit Judge.
 
 
 1
 The National Labor Relations Board seeks to enforce an order against the W.L. Miller Company for violation of sections 8(a)(1) and 8(a)(5) of the National Labor Relations Act, 29 U.S.C. Secs. 158(a)(1), (5) (1982). The alleged violations involve Miller's repudiation of a labor agreement validly accepted by the Associated General Contractors of Missouri, a multiemployer bargaining unit to which Miller belonged, and Miller's subsequent refusal to bargain with the Eastern Missouri Laborers Council, the Union signatory to the agreement. Miller argued before the Board that the agreement was simply a section 8(f) pre-hire agreement, 29 U.S.C. Sec. 158(f), which it could repudiate at will. The Board rejected this view, and instead retroactively applied a new rule announced in John J. Deklewa & Sons, Inc., 282 N.L.R.B. 184, 124 L.R.R.M. 1185 (1987), enf'd sub nom. International Ass'n of Bridge, Structural and Ornamental Iron Workers v. NLRB, 843 F.2d 770 (3d Cir.1988), that section 8(f) agreements are enforceable during the life of the agreement, but impose no continuing obligation to bargain following the termination of that agreement. Miller argues that Deklewa improperly construed section 8(f), and in any event should not be applied retroactively. The Union intervenes, arguing that the limitation of responsibility to the period of the contract was improper. We decline the invitations of both parties to reexamine the Deklewa rule, and hold that it should be applied retroactively. We believe, however, that manifest injustice would result from holding Miller fully responsible for the interest that would be required by the board's order and modify the order in this respect. We otherwise grant enforcement of the board's order.
 
 I.
 
 2
 Miller began performing work in Missouri in 1972, but did not establish a continuing bargaining relationship with the Union. Its employees did not designate or select the Union or any other labor organization as their representative. Miller joined the Associated General Contractors of Missouri in 1979, but declined to adopt the labor agreements negotiated by that body. Before 1980, individual members of the Association were not bound by these agreements, but instead determined individually whether accepting them was in their own best interests. No provision in the association bylaws bound a member to any labor agreement. Miller advised the association manager that it had previously operated on an open shop basis in Missouri, and desired to continue in this manner.
 
 
 3
 On February 5, 1980, the association informed its members that the previous labor agreements were due to expire by the end of April, and that a committee was being formed to negotiate new agreements. The association distributed "designation of representative" forms, which when signed by a member gave the committee the power to bind that member to the labor agreement. This form had not been used previously. Miller's President signed the form on February 8, but instructed the company's office manager to not mail the form without first ensuring that the form would not obligate Miller in any way. For some reason these instructions were not followed, and the form was mailed to the association. A tentative labor agreement was reached by May 6, and the association notified all members of a meeting where the final binding vote would take place. The contract was approved at that meeting, and a May 9 bulletin informed all members that a binding contract extending from May 1, 1980 through April 30, 1983 had been concluded.
 
 
 4
 The Union immediately began trying to persuade Miller to abide by the terms of the contract. The Miller superintendent was contacted several times without success. On July 23 Miller informed the Union that it believed the contract to be a section 8(f) agreement, that the majority of Miller employees were not Union members, and that this gave it a unilateral right to repudiate. Miller then terminated the agreement. The Union responded by filing an unfair labor practice complaint with the Board.
 
 
 5
 In an administrative hearing, the Administrative Law Judge found the relevant facts to be essentially as we have recited. In rejecting Miller's claim that it was not a party to the contract, the ALJ found that Miller and the seventy-nine other signatories had unequivocally intended to be bound as a group, and that therefore a valid multiemployer bargaining unit had been established. The ALJ further determined that the Union enjoyed majority status in the multiemployer unit as a whole, even though Miller's employees were not themselves Union members. As a result, a full relationship was established between the multiemployer unit and the Union. Under section 9(a) of the NLRA, 29 U.S.C. Sec. 159(a), this imposed a continuing obligation to bargain between the two parties. Miller's employees were in effect merged with the employees of the other signatories, with the resultant conversion from a section 8(f) relationship to a section 9(a) relationship. The ALJ ultimately found Miller to be in violation of sections 8(a)(5) and (1). On August 19, 1981, he ordered Miller to sign and implement the 1980-83 contract, apply its terms retroactively to May 1, 1980, and recognize and bargain with the Union as the sole legitimate representative of the workers.
 
 
 6
 Miller filed exceptions with the Board on September 8, 1981, and both parties submitted briefs to that body. The Board did not issue a decision until July 23, 1987, almost six years after the ALJ's original order. Earlier in 1987 the Board had decided that the conversion doctrine relied on by the ALJ, which held section 8(f) agreements to be fully enforceable only if the Union enjoyed majority status in the appropriate unit of workers, would no longer be applied to section 8(f) agreements. See Deklewa, 282 N.L.R.B. at ----, 124 L.R.R.M. at 1194-95. Instead, it had held that a Union signatory to an agreement permitted under section 8(f) acquires only a limited section 9(a) representative status, to the extent that the section 8(f) agreement may not be unilaterally repudiated during its term. Id. In reviewing the ALJ's decision with regard to Miller, the Board abandoned the ALJ's conversion approach in favor of the new Deklewa rule. Under this analysis, the Board found Miller fully liable for the 1980-83 contract, but also found no presumption of Union majority status following the expiration of that contract. Thus, the Board found that Miller violated sections 8(a)(5) and (1) only during the life of the 1980-83 contract, and ordered only damages for breach of that contract, along with the interest on any amount due. The Board then applied for enforcement of the order, and both Miller and the Union petitioned for review.
 
 II.
 
 7
 Both Miller and the Union ask us to evaluate the Deklewa rule itself. Miller argues that any rule mandating the enforcement of pre-hire agreements is contrary to Congressional intent in enacting section 8(f), and is therefore an impermissible construction of that statute. Similarly, the Union argues that although the Board's new interpretation is correct in enforcing section 8(f) agreements during their lifetime, it exceeded its power in deciding that such agreements produce no continuing obligation to bargain following the expiration of the initial agreement.
 
 
 8
 The Third Circuit has recently enforced Deklewa in International Ass'n of Bridge, Structural and Ornamental Iron Workers v. NLRB, 843 F.2d 770 (3d Cir.1988). While this appeal was pending, the Ninth Circuit reached a similar result. See Mesa Verde Constr. Co. v. Northern Cal. Dist. Council of Laborers, 861 F.2d 1124 (9th Cir.1988) (en banc). We believe that the Third Circuit's reasoning concerning the propriety of the Deklewa rule is correct, and we decline the invitation to examine it anew.
 
 
 9
 Contrary to Miller's assertions, the Supreme Court decisions of NLRB v. Iron Workers Local 103 (Higdon Constr. Co.), 434 U.S. 335, 98 S.Ct. 651, 54 L.Ed.2d 586 (1980) and Jim McNeff, Inc. v. Todd, 461 U.S. 260, 103 S.Ct. 1753, 75 L.Ed.2d 830 (1983) do not mandate the old conversion rule as the only possible interpretation of section 8(f). Higdon could not reject that proposition any more plainly: "We have concluded that the Board's construction of the Act, although perhaps not the only tenable one, is an acceptable reading of the statutory language and a reasonable implementation of the purposes of the relevant statutory sections." Higdon, 434 U.S. at 341, 98 S.Ct. at 656 (emphasis added). As the Third Circuit noted, McNeff relied heavily on Higdon's language concerning section 8(f). See Iron Workers (Deklewa), 843 F.2d at 776. We agree with the Third Circuit that the Supreme Court had not issued a definitive statement on this issue and that the Board was therefore free to change its interpretation to be more consistent with the objectives of the statute.[1] In Iron Workers (Deklewa), the Third Circuit quoted at length from the Board opinion to demonstrate the careful thought and planning behind the new rule. We feel no need to repeat this discussion. Suffice it to say that we agree with the Third Circuit in finding the Deklewa rule a rational and well reasoned interpretation of section 8(f) that will further Congressional objectives. We defer to the Board's judgment, see Higdon, 434 U.S. at 350, 98 S.Ct. at 660, and apply the Deklewa rule in this Circuit.
 
 III.
 
 10
 The remaining issue is whether the Deklewa rule should be applied retroactively. The Deklewa Board decided to apply the rule "to all pending cases in whatever stage." Deklewa, 282 N.L.R.B. at ----, 124 L.R.R.M. at 1198 (quoting Deluxe Metal Furniture Co., 121 N.L.R.B. 995, 1006-07 (1958)). Although other circuits have been split over what standard of review to apply to administrative retroactivity decisions,[2] we believe the issue was settled by this court in NLRB v. Monark Boat Co., 713 F.2d 355 (8th Cir.1983). We must apply the law as it stands at the time of our decision, particularly when the Board has explicitly stated that it should be applied retroactively. The only exception occurs when the result would be manifestly unjust. See id. at 361.
 
 
 11
 Miller cites two arguments for the proposition that retroactive application of Deklewa would be manifestly unjust in this case. First, Miller argues that the repudiation in question was permitted by law at the time it was made. This is a powerful argument, and has been used by other courts to avoid retroactive application of Deklewa. See, e.g., National Automatic Sprinkler Indus. Pension Fund v. American Automatic Fire Protection, 680 F.Supp. 731, 735 (D.Md.1988); Construction Indus. Welfare Fund v. Jones, 672 F.Supp. 291, 294 (N.D.Ill.1987). Other courts have rejected this argument, however, reasoning that the old conversion rule, which upheld section 8(f) agreements only when the Union signatory enjoyed majority status, was so unpredictable that no company could reasonably rely on being able to repudiate section 8(f) agreements. See, e.g., Iron Workers (Deklewa), 843 F.2d at 781; R.W. Granger & Sons, Inc. v. United Bhd. of Carpenters & Joiners, 686 F.Supp. 22, 29 (D.Mass.1988).
 
 
 12
 We are hesitant to adopt a strict rule that an employer could never have reasonably relied on its ability to repudiate a section 8(f) agreement. There were obviously some situations where a Union signatory did not enjoy anything close to majority status, and the possibility of conversion was therefore remote. When two parties negotiate at arm's length, both aware that the law currently permits repudiation of any contract they make unless certain events occur, the probability of those events happening will influence the terms of the contract. Applying Deklewa to a situation such as this would "undermine the prior contract between the parties," Construction Indus. Welfare Fund, 672 F.Supp. at 294, and create a windfall for the union by holding the employer to terms that would never have been agreed upon if the Deklewa rule were anticipated. On the other hand, the right to repudiate had, over the years, been substantially limited by case law, and frequently could only be determined through complex and lengthy litigation probing whether the union had acquired majority support in the appropriate bargaining unit, which in turn involved issues of "permanent and stable" or "project by project" work force and whether a multiemployer bargaining unit existed. Such issues are, moreover, difficult to litigate when they deal with events long past. This leads us to consider whether the contract in question would have been enforceable under the old conversion rule.
 
 
 13
 In the present case we are satisfied that conversion had already taken place when Miller tried to repudiate. The rule for multiemployer agreements is set out in Amado Electric, 238 N.L.R.B. 37 (1978), and Authorized Air Conditioning Co., 236 N.L.R.B. 131 (1978), enf'd on other grounds, 606 F.2d 899 (9th Cir.1979), cert. denied, 445 U.S. 950, 100 S.Ct. 1598, 63 L.Ed.2d 785 (1980). The correct unit for measuring Union majority status is not the employees of one separate company, but the employees of all the employer signatories to the contract. See Authorized Air Conditioning, 236 N.L.R.B. at 134. In the present case the ALJ explicitly found the Union to enjoy majority status in the multiemployer unit which Miller had voluntarily joined, and we do not find this determination to be clearly erroneous. Thus, Miller was already bound to an enforceable contract under the old conversion rule when it tried to repudiate. If anything, Miller is benefited by application of the Deklewa rule, since this rule relieves it of a continuing obligation to bargain with the Union that it would have had otherwise. Thus, Miller's reliance on the former law cannot create manifest injustice in this case.
 
 
 14
 Miller's second theory of manifest injustice arises from the delay of the Board in deciding the case. The parties made clear in argument that the live issue before us is not underpayment of the employees, but rather Miller's failure to make contributions to the Union's benefit fund. We have no hesitation in determining that the retroactive application of the Deklewa rule renders Miller liable for the contributions to the fund. The interest, however, raises additional concerns. Miller repudiated the contract on July 23, 1980. After the complaint was filed, the ALJ issued his ruling on August 19, 1981 and Miller filed its exceptions with the Board on September 8, 1981. The contract in question was to run from May 1, 1980 to April 30, 1983. The Deklewa rule arose in a substantially later time frame. In Deklewa the employer resigned membership in the association and repudiated the contract with the Union on September 30, 1983. After the Union filed charges, a complaint was issued November 28, 1983, which was amended March 8, 1984, and the parties filed a stipulation of facts and waived hearings before an ALJ stating a desire to submit the case to the Board. This was granted by an order of October 15, 1984. On March 24, 1986 the case was orally argued before the Board, and the decision handed down February 26, 1987. Thus, the controversy in Deklewa arose and the litigation was waged long after the contract at issue in this case expired.
 
 
 15
 Under these circumstances, with the sole issue before us involving payment into the Union's benefit fund, and considering the ALJ's findings that none of Miller's employees were ever members of the Union, we conclude that it would be manifestly unjust to award interest for the entire period. We are satisfied that interest should be awarded only for the period from May 1, 1980 to April 30, 1983, and from the time of the Board's decision in this case, July 23, 1987, until the date that the interest is finally paid. We realize, as hinted in argument, that the Board had a number of concerns which caused it to reevaluate the issues presented by this case, and that those concerns were not addressed until the decision in Deklewa. Miller, however, should not be required to pay interest during this deliberate, if not leisurely, consideration of the issues in this action. To rule otherwise would be granting the Union a windfall. We are satisfied that the interest we award gives it just recovery for the loss of these funds.
 
 IV.
 
 16
 In summary, we hold that the Board's Deklewa decision is a rational interpretation of section 8(f), and is therefore valid. The Union's petition for review is accordingly denied. We additionally defer to the Board's decision to apply the new rule retroactively, absent a showing of manifest injustice. We find manifest injustice only with respect to the interest assessed against Miller, and accordingly we grant the Board's application for enforcement, with interest to be awarded only from May 1, 1980 to April 30, 1983, and commencing again on July 23, 1987.
 
 
 
 *
 The HONORABLE WILLIAM C. STUART, Senior United States District Judge for the Southern District of Iowa, sitting by designation
 
 
 [1]
 As the Board points out, the previous rule had twice been rejected by the District of Columbia Circuit. The rule had also been sharply questioned by the Third Circuit. The Supreme Court silenced these voices with Higdon, but only by finding the voidability construction reasonable, and therefore entitled to deference. The Board was apparently moved by these criticisms, however, and began a thorough reevaluation of its policy. This review culminated with the new rule announced in Deklewa
 
 
 [2]
 Several circuits give deference absent a showing of manifest injustice. See Iron Workers (Deklewa), 843 F.2d at 789-81; NLRB v. New Columbus Nursing Home, Inc., 720 F.2d 726, 729 (1st Cir.1983); NLRB v. Semco Printing Center, Inc., 721 F.2d 886, 892 (2d Cir.1983). Some courts, however, have given little deference to Board decisions concerning retroactivity. See Retail, Wholesale and Dep't Store Union v. NLRB, 466 F.2d 380, 390 (D.C.Cir.1972) (independent analysis). We believe that Congress has given the Board wide latitude to interpret all aspects of statutory labor policy, justifying a deferential review. See Iron Workers (Deklewa), 843 F.2d at 780