**W.L. MILLER COMPANY, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

**EASTERN MISSOURI LABORERS DISTRICT COUNCIL, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

**W.L. MILLER COMPANY, Respondent,**

v.

**NATIONAL LABOR RELATIONS BOARD, Petitioner.**

**Nos. 92–1850, 92–1885 and 92–2080.**

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 17, 1992.

Decided March 16, 1993.

Jack L. Whitacre, Kansas City, MO, argued, for W.L. Miller Co.

Jerald A. Hochsztein, St. Louis, MO, argued, for Eastern Missouri Laborers Dist. Council.

William Bernstein, Washington, DC, argued (William M. Bernstein, Jerry M. Hunter, Yvonne T. Dixon, Nicholas E. Karatinos and Aileen A. Armstrong on the brief), for N.L.R.B.

Before JOHN R. GIBSON and WOLLMAN, Circuit Judges, and STROM,* District Judge.

JOHN R. GIBSON, Circuit Judge.

This case is before us again after the National Labor Relations Board ordered W.L. Miller Company to give back pay to individuals who would have been hired at hiring halls had Miller complied with its collective bargaining agreement. Miller petitioned for review and argues that the remedy imposed is beyond that encompassed in our earlier decision, *National Labor Relations Board v. W.L. Miller Co.*, 871 F.2d 745 (8th Cir.1989) (*Miller I*). The union, Eastern Missouri Laborer's District Council also petitioned for review, arguing that the hiring hall remedy ordered was insufficient because it did not include back pay for workers who should have been hired in place of Miller's pre-agreement crew. The Board applied for enforcement of its order. We deny enforcement of the order, deny the union's requested relief and grant Miller's requested relief.

The history of this case extends back to a collective bargaining agreement between the union and the Associated General Contractors of Missouri effective May 1, 1980 through April 30, 1983. Miller had joined the Associated General Contractors in 1979. Miller declined to adopt the earlier collective bargaining agreements negotiated by the AGC, and claimed that it only designated the AGC as its bargaining agent in 1980 by "inadvertence". Miller attempted to repudiate the 1980–83 agreement on the grounds that it was a section 8(f) pre-hire agreement terminable by the employer if the union were not designated by a majority of the employer's workers.

The union filed an unfair labor practice charge against Miller for refusing to abide by the agreement. The Board issued an order on July 23, 1987, ruling that Miller could not repudiate the agreement. In *Miller I*, we considered the Board's application to enforce that order. While *Miller I* was pending, the Board's General Counsel, on November 4, 1987, filed a Motion for Clarification with the Board to specifically require Miller to pay back pay to employees who would have been referred out of the union's hiring hall if Miller had followed the hiring hall provisions of the applicable collective bargaining agreement. On July

* The HONORABLE LYLE E. STROM, Chief Judge, United States District Court for the District of Nebraska, sitting by designation.

8, 1988 the Board denied the motion for lack of jurisdiction because petitions for enforcement and review had been filed with this court, thus divesting the Board of jurisdiction to modify its order.

We heard argument in *Miller I* on June 16, 1988, and issued our decision on March 29, 1989. Applying *John Deklewa & Sons, Inc.*, 282 N.L.R.B. 1375, (1987), *enf'd sub nom., International Ass'n of Bridge, Structural and Ornamental Iron Workers v. NLRB*, 843 F.2d 770 (3d Cir.), *cert. denied*, 488 U.S. 889, 109 S.Ct. 222, 102 L.Ed.2d 213 (1988), retroactively, we held that Miller could not repudiate the AGC agreement. 871 F.2d at 750. We specifically noted that the issue before us was whether Miller was required to contribute to the union's benefit fund, and we required Miller to do so. *Id.*

The General Counsel then filed a second clarification motion on May 19, 1989, and the Board granted the motion for clarification ordering the hiring hall remedy. After the Board's Regional Office issued its Compliance Specification and Notice of Hearing, the union requested review and an ALJ held further proceedings. The ALJ found that after the collective bargaining agreement became effective, Miller hired seven additional employees who had not worked in the area before. ALJ slip op. at 5. The ALJ concluded that Miller should have staffed these positions through the hiring hall and would have paid $19,401.02 in 1980 to the seven employees who would have been hired. *Id.* The ALJ did not include back pay on nine employees who had worked on Miller's 1979 crew, since the employer was entitled to keep its pre-agreement crew. The ALJ identified 26 individuals who used the hiring hall in the third and fourth calendar quarters of 1980, the periods during which Miller hired the seven additional employees. He ordered Miller to pay the individuals using the hiring hall during the third and fourth quarters of 1980 the amount that had improperly gone to the seven employees actually hired. As two of the individuals who had used the hiring hall were not available for work during the third quarter, they received a smaller amount, $456.77, and twenty-four

employees received $770.32. ALJ slip op. at 11.

The Board affirmed the ALJ's rulings, findings and conclusions and adopted the recommended Supplemental Order. 306 N.L.R.B. No. 190 (Mar. 30, 1992).

Miller filed a petition for review, arguing that the hiring hall remedy was an impermissible modification of the relief affirmed in our first decision. Miller also argues that the hiring hall operated in a discriminatory fashion, making the remedy ordered contrary to the policies of the National Labor Relations Act, and that it would be manifestly unjust to order the back pay remedy with interest based upon a retroactive application of *Deklewa*. The union filed a petition for review, arguing that the ALJ should have ordered back pay for the positions filled by Miller's pre-agreement crew as well as the seven new hires. The Board filed an application for enforcement of the Supplemental Order.

## I.

◼ Miller argues that the Board acted beyond its jurisdiction in adding the hiring hall back pay remedy. The Board maintains that the hiring hall remedy was within its discretion and is a remedy the Board has consistently recognized and applied. The Board answers the jurisdictional argument by saying that it simply clarified the scope of an existing order.

In *Miller I*, we specifically stated that the remedy sought was limited to certain fringe benefit payments: "The parties made clear in argument that the live issue before us is not underpayment of the employees, but rather Miller's failure to make contributions to the Union's benefit fund." 871 F.2d at 749. At oral argument in the present case, counsel did not dispute that the statement was correct at the time we made it. The accuracy of the statement is further confirmed by language in a brief filed with the ALJ by the Board's General Counsel before the first order in 1981 asking that Miller be required to take the affirmative action of "mak[ing] payments for all employees who have performed la-

borers [sic] work since May 1, 1980 into the Union's respective fringe benefit funds as provided for in the collective bargaining agreement."

It is true that the language in the judgment entered following our opinion was general, ordering Miller to "[m]ake whole the ... employees [covered by the agreement], in the manner set forth in the remedy, of the Board's decision for any losses they may have suffered as a result of [Miller's] failure to adhere to the contract ... with interest on contributions to the union benefit fund to be awarded only from May 1, 1980, to April 30, 1983 and commencing again on July 23, 1987." *N.L.R.B. v. W.L. Miller Co.,* 871 F.2d 745, 749–50 (8th Cir.1990). We do not consider this language probative of either party's position.

On this record, we entertain no doubt that our opinion in *Miller I* was directed to the fringe benefit issue then before us as agreed by counsel. The Board had no jurisdiction to modify the remedy after judicial enforcement. *See Int'l Union of Mine, Mill & Smelter Workers v. Eagle–Picher Mining & Smelting Co.,* 325 U.S. 335, 65 S.Ct. 1166, 89 L.Ed. 1649 (1945). In *Eagle–Picher* the Board petitioned this court to vacate a portion of a decree dealing with back pay and to remand the case so that the Board might prescribe relief it deemed more appropriate. The Supreme Court held the Board was not entitled to reopen the decree:

> We are not dealing here with an administrative proceeding. That proceeding has ended and has been merged in a decree of a court pursuant to the directions of the National Labor Relations Act. The statute provides that if, in the enforcement proceeding, it appears that any further facts should be developed the court may remand the cause to the Board for the taking of further evidence and for further consideration. (§ 10(e).) But it is plain that the scheme of the Act contemplates that when the record has been made and is finally submitted for action by the Board the judgment "shall be final." It is to have all the qualities of any other decree entered in a litigated

cause upon full hearing, and is subject to review by this court on certiorari as in other cases.

> . . . .

> Finality to litigation is an end to be desired as well in proceedings to which an administrative body is a party as in exclusively private litigation. The party adverse to the administrative body is entitled to rely on the conclusiveness of a decree entered by a court to the same extent that other litigants may rely on judgments for or against them.

325 U.S. at 339–40, 65 S.Ct. at 1168 (footnote omitted). *Eagle–Picher* makes clear that with the issuance of our opinion and judgment, and expiration of the time for certiorari, the dispute was finally adjudicated.

The Ninth Circuit based a similar holding on jurisdictional grounds in *Service Employees International Union Local 250, AFL–CIO v. NLRB,* 640 F.2d 1042 (9th Cir.1981), where, after a final decision of the Court of Appeals, the union went before the Board to reopen the case to consider an allegation raised, but not disposed of, in the original proceedings. The court held the Board had no jurisdiction to consider the charge:

> A preclusive effect in the Court of Appeals' mandate is fairly implied from the scope of its jurisdiction and the wording of its judgment. In section 10(e) of the National Labor Relations Act, 29 U.S.C. § 160(e) (1976), Congress provided that "[u]pon the filing of the record with [the Court of Appeals] the jurisdiction of the court shall be exclusive and its judgment and decree shall be final...."

640 F.2d at 1044.

It is significant that an earlier motion for clarification was pending before the Board when the parties appeared to argue *Miller I.* None of the parties applied to this court for remand as provided in 29 U.S.C. § 160(e) (1988), a fact the Supreme Court stressed in *Eagle–Picher. See* 325 U.S. at 339, 65 S.Ct. at 1168.

The Board argues that under *Wayne Electric Inc.*, 226 N.L.R.B. 409 (1976), and *Southwestern Steel & Supply, Inc. v. N.L.R.B.*, 806 F.2d 1111 (D.C.Cir.1986), an order directing payment of back pay to employees encompasses all individuals who would have been hired absent the unlawful conduct. We do not quarrel with that proposition, but it simply misses the mark. The Board has attempted to modify the type of relief requested of us and ordered as part of a final judgment.[1] All litigation must have finality. Had any of the parties desired to bring the hiring hall back pay remedy before us in the initial proceedings, a motion to remand for consideration of the motion for clarification then before the NLRB could have been filed. Had it been granted and the clarification made at that point, the entire case could have come before us at one time. It did not. We determined the issue before us, .namely the fringe benefit issue, and rendered a final judgment. The finality of that judgment bars consideration of the hiring hall back pay remedy.

## II.

■ Still another reason exists for declining to enforce the hiring hall back pay remedy. In *Miller I*, we recounted the long history of this case. The first order of the ALJ was issued August 19, 1981. Miller filed exceptions with the Board on September 8, 1981, and the Board did not issue a decision until July 23, 1987. The Board's decision relied upon a new rule adopted in *Deklewa*, while the charges were based on a repudiation of a contract on September 21, 1983. The case was submitted to the Board in 1984, argued in 1986, and decided February 20, 1987. We held in *Miller I* that it would be manifestly unjust to award interest for the entire period in view of the long delay in deciding Miller's case. 871 F.2d at 750. We believe that the same reasons compel a conclusion that it would be manifestly unjust to sustain a hiring hall back pay award against Miller in view of the long pendency of this

case. Had the back pay issue been raised in the initial hearing, or had the parties sought to have the issue remanded to the Board for consideration while it was pending before this court, we could perhaps have viewed the matter more favorably. We are satisfied it would be manifestly unjust to extend further relief under these facts.

What we have said makes it unnecessary to reach Miller's argument that the hiring hall was discriminatory, and compels us to reject the union's argument that the relief should have been more extensive. We deny enforcement of the Board's order of March 30, 1992. Thus ends this litigation.

---

1. The back pay due to the fringe benefit fund was $5,981.40, plus $4,238.45 in interest, a total of $10,219.85. The relief awarded in the clarification or modification, as set forth above, exceeded $19,000 with interest thereon for the same periods provided in our court judgment.